MASSACHUSETTS WELFARE RIGHTS
ORGANIZATION et al., Plaintiffs,
Appellants,

v.

Robert F. OTT, Commissioner, et al.,
Defendants, Appellees.

No. 7392.

United States Court of Appeals
First Circuit.

Heard Oct. 6, 1969.

Decided Nov. 6, 1969.

David M. Lipton, Chelsea, Mass., with
whom Richard A. Seid, Boston, Mass.,
was on brief, for plaintiffs-appellants.

James J. Marcellino, Deputy Asst.
Atty. Gen., with whom Robert H. Quinn,
Atty. Gen., and Gregor McGregor, Dep-
uty Asst. Atty, Gen., were on brief, for
defendants-appellees.

Before ALDRICH, Chief Judge, Mc-
ENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an appeal from a denial by
the district court of a request for the
appointment of a three-judge court pur-
suant to 28 U.S.C. § 2281, and the dis-
missal of the complaint for failure to

state a claim of any nature. Since we agree that dismissal was appropriate, it is unnecessary to consider separately whether the alleged claims are justiciable by one judge, or three.

Plaintiffs are the Massachusetts Welfare Rights Organization, an unincorporated association whose members are welfare recipients receiving public assistance from the Commonwealth of Massachusetts,[1] and various individuals receiving assistance who are members thereof. They purportedly bring this action as a class suit on behalf of the other members of the association, and all other persons receiving such assistance. The defendant Ott is the Commissioner of Public Welfare and is in charge of the administration of the public assistance program, and the other defendants are officials and employees connected therewith. The complaint alleges that on March 11, 1969 "the Department"[2] promulgated a regulation by which the named plaintiffs and others had been "denied certain grants and services." It concludes that the regulation,

> "in not prescribing specific and narrow standards to achieve permissible governmental objectives, is vague and overbroad, and deprives plaintiffs of rights guaranteed by the Fourteenth and First Amendments to the Constitution of the United States including freedom of speech, assembly and to petition for redress of grievances, by penalizing group efforts to apply for and obtain public assistance."

Plaintiffs ask that the regulation be declared "unconstitutional on its face and as applied, violating the Fourteenth and First Amendments to the Constitution of the United States," and for injunctive relief. The record presents no separate issues as to application.[3]

The attacked regulation commences with a three-paragraph introduction, the last of which describes its asserted purpose. "In the event of demonstrations, disturbances or sit-ins, the following procedures are to be followed. * * *" Six paragraphs of procedures are set out, only three of which are complained of.

1. At any time an unusually large number of individuals enter a welfare service office at the same time or the person in charge of the office knows definitely that an unusually large number of individuals are to arrive in a group, a police detail is to be requested from the local police authority by the person in charge of the welfare service office.

2. When the conditions described in #1 above exist, the person in charge of the office is to instruct all staff members that no supplementary or special grants are to be authorized except for those individuals who are new applicants for whom regular, continuing assistance payments have not yet been instituted.

3. The Department does not intend to permit its staff members to be subjected to mass pressures or coercion or to make decisions under such conditions. Therefore, when the circumstances described in #1 above are determined by the person in charge to exist, no service is to be extended to members of the group involved. If demands are presented by the group, the office head is to accept them, informing the group or its spokesmen of Departmental policy in relation to the particular requests made and about procedures established by this memorandum. There should then be no necessity for prolonged discussion with the group or its spokesman.

The balance, ¶¶ 4–6, state what is to be done in case the staff finds itself unable to exclude uninvited persons from their

---

1. Mass.G.L. c. 18; 42 U.S.C. §§ 601–609.

2. We will assume that plaintiffs use the phrase "the Department" to mean the Commissioner pursuant to statutory authorization.

3. Although plaintiffs allege that on specified dates certain plaintiffs were denied services on the basis of the March 11 policy, there are no allegations about the size of the group involved, the activities they engaged in, the nature of the services sought, or the motives of state officials.

inner offices, or are threatened with bodily harm. Plaintiffs have no objection to these provisions but, on the contrary, state that they are the appropriate and precise limits of proper procedure. Hereafter in referring to the regulation, we speak only of ¶¶ 1–3.

Although there are differences between plaintiffs' cited cases and the one at bar, we will assume that plaintiffs have the demanded "right to associate, [to speak] and petition at a welfare service office," [4] and go directly to the heart of the matter—what are the corresponding rights of the state authority that is conducting the legislatively prescribed business on the premises. The general standard is very clear. "Even where municipal or state property is open to the public generally, the exercise of First Amendment rights may be regulated so as to prevent interference with the use to which the property is ordinarily put by the State." Amalgamated Food Employees v. Logan Valley Plaza, Inc., 1968, 391 U.S. 308, 320, 88 S.Ct. 1601, 1609, 20 L.Ed.2d 603. The state cannot "unwarrantedly abridge the right of assembly and the opportunities for the communication of thought * * *" Cox v. New Hampshire, 1941, 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049, quoted in Shuttlesworth v. Birmingham, 1969, 394 U.S. 147, 155, 89 S.Ct. 935, 22 L.Ed.2d 162. Protection of its activities "may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." NAACP v. Alabama ex rel. Flowers, 1964, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325. See Note, Regulation of Demonstrations, 1967, 80 Harv.L. Rev. 1773, 1776–77.

Although plaintiffs' brief concedes the legitimacy of "procedures to insure efficient operation of a welfare service office," it does not address itself to what those problems may be, or how they are to be met, except negatively. "[T]he Department's methods are simply not relevant to any abuse." The regulation "fails to distinguish between protected and unprotected conduct." We think both accusations demonstrably erroneous.

The first question is what does the regulation look to as a possible abuse. To begin with, it applies only when "an unusually large number of individuals enter a welfare service office at the same time, or are known definitely by the person in charge as about to arrive, for the purpose of "demonstrations, disturbances or sit-ins."[5] Pausing here, plaintiffs argue that the words "unusually large number" are vague and indefinite. We do not accept this contention, finding it difficult to imagine what better language could give the person in charge of the office the necessary discretion to determine the advent of a large cohesive group that might create special problems. Even if, although plaintiffs suggest none, more specific language could be devised, this is not a criminal statute. Less exactitude is required when no criminal sanctions are involved. *See* Winters v. New York, 1948, 333 U.S. 507, 515, 68 S.Ct. 665, 92 L.Ed. 840; Amsterdam, Note, The Void-for-Vagueness Doctrine in the Supreme Court, 1960, 109 U.Pa.L.Rev. 67, 69–70, n. 16. The question requiring consideration is not vagueness but whether the regulation is overbroad in terms of what is to be guarded against or, as plaintiffs put it, the abuse.

As to plaintiffs' first objection, the requesting a police detail, we are quite unprepared to say that it is unreasonable to alert the police to a possible need to handle a large crowd bent on demonstrations, disturbances or sit-ins.

---

4. We will not, however, accept the correctness of plaintiffs' assertion that, because it is municipal property, their rights are governed by Gregory v. Chicago, 1969, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134. A welfare office is not to be equated with a public street.

5. We believe that this introductory paragraph is fairly to be taken as qualifying the scope of the regulation. Consequently, if the only activity of the crowd was organizational recruiting, and there were no demonstrations or disturbances, the directive would not apply.

We turn to the required conduct, or, more exactly, proposed abstention from conduct, of the welfare officials themselves. As plaintiffs concede, the purpose of a welfare office is to permit "welfare personnel to discuss [with applicants] their needs for money and services." Obviously they do something more. They make individual decisions as a result of such discussions. Paragraph 3 of the regulation states, "The Department does not intend to permit its staff members to be subjected to mass pressures or coercion or to make decisions under such circumstances." Accordingly, ¶¶ 2 and 3 provide for the temporary restriction of services: none to the members of the group while the group remains, and no decisions to make supplementary or special grants to non-members of the group who are already receiving regular payments.

■ It seems unthinkable that plaintiffs should assert, as they did in oral argument,[6] that they have the absolute right to have the welfare employees exercise their judgment and pass upon discretionary matters while under the immediate pressure of a large crowd of demonstrators. Cf. Cox v. Louisiana, 1965, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed. 2d 487 (Statute forbidding picketing near a courthouse with intent to influence a judge is constitutional). It is such extreme claims as this that tend to bring even legitimate reliance upon free speech into public disfavor. The Department had every right to have its employees make decisions free from pressure and coercion.

We would have more sympathy with plaintiffs' position had they argued that the regulation does not attempt to distinguish between services requiring the exercise of judgment, and those purely ministerial.[7] We will not, however, adopt that position. In the first place, it may

be of great practical difficulty to tell whether a particular applicant is seeking discretionary service requiring judgment, or is merely seeking something entirely routine. If the employees attempted to draw a distinction, applicants who were in a protesting frame of mind might initiate their requests as being routine, and then change over, causing undue complications. We would, however, go further. When criminal penalties are not involved, as a matter of housekeeping the Department should be allowed to sweep more broadly in circumscribing potentially disruptive situations. Once there is a disturbance it might well be as difficult for the employees to assess its potential as it would be to make ultimate decisions connected with their work. We say this in the light of the fact that, after all, this is not a serious restraint. The temporary suspension of all services to the group lasts only so long as it is engaged in "demonstrations, disturbances, or sit-ins." No disqualification carries over after the demonstration has ceased. Conversely, the demonstration is not interfered with in any other way; there is even an express provision that any petition presented shall be accepted.[8] We cannot think it unreasonable that the Department should offer to an applicant the choice of demonstrating or receiving immediate services, but not both. Plaintiffs cannot expect us to uproot doctrines of overbroadness applicable to criminal sanctions and apply them here.

Nor is it any answer for plaintiffs to say, "[T]he group's purpose may be to assist or advise rather than intimidate." We are not clear whether they mean advise the applicant, or the welfare employees. It would hardly seem that an unusually large crowd of demonstrators is needed simply to advise an applicant. If plaintiffs mean advise the staff, the

---

6. See, also, the quotation from their brief, *supra*, that the regulations "are simply not relevant."

7. The latter was apparently the situation in Brown v. Louisiana, 1966, 383 U.S.

131, 86 S.Ct. 719, 15 L.Ed.2d 637, where the only service requested by the demonstrators was the location of a book.

8. It may be observed that in Brown v. Louisiana, *supra*, the demonstrators were arrested and removed.

Department has a right not to want its employees "advised" by a large group while they are presently engaged in other matters just as much as it has not to have them, to use plaintiffs' word, intimidated.

Finally, although plaintiffs do not specifically raise it, a demonstration might be conducted that did not relate to the local office at all. It does not follow that it would not be disturbing. We believe the Department's housekeeping prerogatives can reasonably extend thereto.

Further discussion is not called for. What we have already said disposes of plaintiffs' contention that the regulation does not distinguish between protected and unprotected conduct. It does, to an entirely reasonable extent. We find insupportable any contention that the regulation interferes with plaintiffs' constitutional rights. There being, in our opinion, no substantial question presented for either a three-judge court, or a single judge, the complaint was properly dismissed.