Ann Marie LeCLAIR, Mary Linda Lusk, Ruth Vadney, Jill Watts, William Pastreich, National Welfare Rights Organization, Massachusetts Welfare Rights Organization, Worcester Welfare Rights Organization, individually and on behalf of other persons similarly situated, Plaintiffs,

v.

George D. O'NEIL, Chief of Police of the City of Worcester, William T. Buckley, District Attorney for the City of Worcester, Robert H. Quinn, Attorney General of the Commonwealth of Massachusetts, John P. Guilfoil, Director of the Worcester Welfare Service Office, Robert Ott, Commissioner of Welfare for the Commonwealth of Massachusetts, individually and in their official capacities, Defendants.

Civ. A. No. 69-748-J.

United States District Court
D. Massachusetts.

Dec. 23, 1969.

622

Allan G. Rodgers, Lawrence Kotin, Massachusetts Law Reform Institute, Boston, Mass., Joseph Choate III, Neighborhood Legal Services of Worcester, Inc., Worcester, Mass., for plaintiffs; Stephen Bardige, Cambridge, Mass., Mass. Welfare Rights Organization, of counsel.

Robert H. Quinn, Atty. Gen., John Wall, Lawrence P. Cohen, Asst. Attys. Gen., Boston, Mass., for defendants.

Before ALDRICH, Circuit Judge, JULIAN and GARRITY, District Judge.

ALDRICH, Circuit Judge.

Before isolating the questions of standing which we find determinative of this case in which three judges in the District of Massachusetts are asked to consider the constitutionality of a Massachusetts disturbing-the-peace statute, a detailed statement of the facts and background would be appropriate.

On June 20, 1969 another panel of three judges sitting in this district in the case of Hurley v. Hinckley, Chief of Police, 304 F.Supp. 704, a class suit brought by and on behalf of plaintiffs similar to those presently at bar, held that Mass.G.L. c. 266, § 120, a criminal trespass statute, hereafter § 120, did not violate due process because of vagueness and overbreadth, or unconstitutionally limit the plaintiffs' First Amendment

rights sought to be exercised in a Welfare Service Office. On July 3, 1969 the present plaintiffs engaged in activities more fully described hereafter, in another Welfare Service Office, and refused to desist from certain conduct until the police were called. On July 5 they were charged in a local court with trespass under § 120, and with being "disturbers of the peace," under Mass.G.L. c. 272, § 52.[1] Section 53 carries a maximum penalty of six months in jail, and a $200 fine whereas § 120 carries only a small fine. Trial was set for both sets of cases on July 17.

On July 14 plaintiffs filed the present complaint. The defendants moved to dismiss,[2] but stipulated that the prosecution under § 53 would be postponed until further notice. After the three-judge court was constituted defendants were temporarily restrained from prosecuting the § 53 actions until further order of court, and after hearing, a temporary injunction was entered to the same effect. On this same day the court heard defendants' motion to dismiss. Meanwhile, plaintiffs had been convicted of trespass under § 120, from which they have claimed an appeal.

The complaint alleges that four of the plaintiffs are members of the Worcester (Massachusetts) Welfare Rights Organization, (WWRO), a branch of geographically larger organizations, and that one is a Worcester recipient of Aid to Families with Dependent Children. The fifth plaintiff, William Pastreich, is a paid organizer. The defendants are the Worcester Chief of Police, the District Attorney, the Attorney General and various Welfare officials. Plaintiffs assert that they bring this action on behalf of themselves and "needy mothers of dependent children living in Worcester who are threatened and intimidated by the arrest and prosecution of the above-named plaintiffs and who are deterred by fear of arrest and prosecution from participating in organizational and other First Amendment activities in the Worcester Welfare Service Office."

According to the complaint the five plaintiffs, and two others, entered the waiting room of the Worcester Welfare Office, hung up some signs, and distributed circulars. In the wall between the waiting room and the inner office where applicants were processed there was a receptionist's window. Plaintiffs set up a folding card table near this wall. Plaintiffs created no other disturbance, but refused requests to remove the table until the police arrived.[3]

The prosecution which plaintiffs seek to enjoin relates solely to plaintiffs' insistence on maintaining the table; no other strictures were placed upon them. They were not requested to leave, either before or after they set up the table, or to reduce their number, or to desist from assembling or organizing, to take down their signs or to stop distributing their circulars. Additionally, the com-

---

1. "Stubborn children, runaways, common night walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly act or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, prostitutes, disturbers of the peace, keepers of noisy and disorderly houses and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

2. While defendants' motion to dismiss challenges the standing only of plaintiffs not being prosecuted in the state court, the argument at the hearing encompassed all plaintiffs. As explained *infra*, no valid distinction relating to standing may, in our view, be drawn between the various plaintiffs.

3. Other facts, of no relevancy, are omitted. Considerable space was spent in the record and at the argument over plaintiffs' assertion that before they arrived they had received permission to erect the table. Not only did defendants deny this, but plaintiffs ultimately conceded, as they must, that any permission was duly revoked and that their conduct continued nonetheless.

plaint refers to plaintiffs' right to "petition." There are no factual allegations that they were seeking to petition, let alone that they were prevented from doing so.

Turning to the question whether plaintiffs have standing to maintain the present action, plaintiffs base their claim on the contention that they are seeking to vindicate First Amendment rights. Even if freedom to exercise these rights exists within the Welfare Office, which, for present purposes, we assume, plaintiffs face substantial difficulties. These may be divided into two basic questions: whether plaintiffs had a constitutional right to erect a table in the waiting room in connection with their distributing literature and their efforts to organize welfare recipients, and whether, if they did not, they had standing to protect the future exercise of rights from "chills" resulting from the use of a potentially broad statute against persons claiming and exercising First Amendment rights.[4]

■ The usual prerequisite for a successful attack upon a statute for constitutional infirmity is that one's own conduct be constitutionally protected; normally a party may not rely on another's constitutional rights. United States v. Raines, 1960, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524; Yazoo & M. V. R. R. v. Jackson Vinegar Co., 1912, 226 U. S. 217, 33 S.Ct. 40, 57 L.Ed. 193. If a party is prosecuted for engaging in conduct which the state has power to punish, he will not normally be allowed to argue that in factual situations not presented by his case enforcement of the statute would pass the bounds of state power. His is not the most appropriate case for decision of issues turning on the impact of the statute in imagined situations involving quite different activities. See A. Bickel, The Least Dangerous Branch, 149 (1962). If this rule is to be applied in the case at bar we are clear that plaintiffs have no standing. Whatever First Amendment rights existed in the Welfare Office, they could not be exercised at the expense of the primary purpose the office was designed to serve.

"Even where municipal or state property is open to the public generally, the exercise of First Amendment rights may be regulated so as to prevent interference with the use to which the property is ordinarily put by the State." Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 1968, 391 U.S. 308, 320, 88 S.Ct. 1601, 1609, 20 L.Ed.2d 603 (dictum). See Note, Regulation of Demonstrations, 80 Harv. L.Rev. 1773, 1776–77, (1967). Cf. Adderley v. Florida, 1966, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149; Cox v. New Hampshire, 1941, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049. Reasonable latitude must be permitted to the persons in charge. Waiting rooms are not traditional forums of protest, and a high degree of peace and order is necessary to their normal operation. Cf. Note, Regulation of Demonstrations, supra, at 1777.

■ Under these circumstances the only question is whether the welfare of-

---

4. There is still further matter, whether since the state proceedings had previously commenced, plaintiffs are precluded from maintaining this action by reason of 28 U.S.C. § 2283. We do not reach that question. See Baines v. City of Danville, 4 Cir., 1964, 337 F.2d 579, cert. denied sub nom. Chase v. McCain, 1965, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702; Cooper v. Hutchinson, 3 Cir., 1950, 184 F.2d 119, 124 and n. 11; Landry v. Daley, N.D.Ill., 1968, 288 F.Supp. 200, 221–225, appeal dismissed sub nom. Landry v. Boyle, 393 U.S. 220, 89 S.Ct. 455, 21 L.Ed.2d 392. Comment, Federal Injunctions Against State Actions, 35 Geo.Wash.L.Rev. 744, 782 (1967); Note, Power to Enjoin State Prosecutions Violative of Federally Protected Rights, 114 U.Pa.L.Rev. 561 (1966); Brewer, Dombrowski v. Pfister: Federal Injunctions Against State Prosecutions in Civil Rights Cases—A New Trend in Federal-State Judicial Relations, 34 Fordham L.Rev. 71, 97–103; Note, Incompatability—The Touchstone of Section 2283's Express Authorization Exception, 50 U.Va.L.Rev. 1404, 1414–23 (1964).

ficials, in curtailing plaintiffs' activities, abused their discretion. Massachusetts Welfare Rights Organization v. Ott, 1 Cir., 1969, 421 F.2d 525; Wolin v. Port of New York Authority, 2 Cir., 1968, 392 F.2d 83, cert. denied, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275. We cannot say that it was unreasonable to object to the erection of a table within the waiting room. We distinguish the suggestion in *Wolin* that it may be a question of fact whether it is unreasonable to object to a table in a large terminal building. In the present case, quite apart from any question whether the particular location interfered with the privacy of applicants wishing to talk with employees in the inner office, we hold that it was within the discretion of the welfare officials to determine that a table occupied by non-applicants unduly burdened the capacity of a room, necessarily of limited size, provided for waiting applicants. Plaintiffs assert that at the time in question there were never more than four applicants in the room. Non constat that many more might well be expected at other times. Plaintiffs' own conduct suggests as much. It was scarcely necessary to introduce five plaintiffs and two others to proselytize four applicants.[5] In any normal waiting room, such as that described in the complaint, extra furniture has a potential for obstruction and officials need not wait until the potential is realized before acting. We conclude that no undue restriction was placed upon plaintiffs' exercise of First Amendment rights.

Because of what is termed the chilling effect of unconstitutional statutes and prosecutions upon the general exercise of First Amendment rights by any person wishing to do so, courts have sometimes relaxed the requirement that the complaining party show that as to him a statute has been applied unconstitutionally, that is, that his conduct was constitutionally privileged and could not be prohibited by the state. *See, e. g.,* Thornhill v. Alabama, 1940, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Winters v. New York, 1948, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840; Kunz v. New York, 1951, 340 U.S. 290, 71 S.Ct. 312, 95 L. Ed. 280. *But cf.* Feiner v. New York, 1951, 340 U.S. 315, 71 S.Ct. 303, 95 L. Ed. 267; Dennis v. United States, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; United States v. Petrillo, 1947, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877. The extent of acceptable relaxation has never been precisely defined. *See generally* Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L.J. 599 (1962); Amsterdam, Note, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U. Pa.L.Rev. 67 (1960). Mr. Justice Brennan, concurring in Brown v. Louisiana, 1966, 383 U.S. 131, 143, 86 S.Ct. 719, 15 L.Ed.2d 637, expressed the view, at 147–148, 86 S.Ct. at 727, that "It suffices that petitioners' conduct was arguably constitutionally protected and was 'not the sort of "hardcore" conduct that would obviously be prohibited under any construction.'"[6] We would elaborate on this suggestion. Since the purpose of permitting a party, not himself engaged in constitutionally protected conduct, to attack a statute is to remove the chilling effect for the benefit of others, the standard should be set by the reason itself: do the overall circumstances reasonably suggest that regardless of

---

5. Alternatively, the fact that plaintiffs entered the waiting room seven strong to assert a right to maintain a table may suggest that the issue was not simply the table as such, but was who was to be the boss. Additionally, if one were to look to labor union cases as a guide, the table might be taken to suggest that the Welfare officials were taking sides and affirmatively endorsing the recruitment activities of the WWRO, so that speech was, in effect, being put into their mouths. If this was the confrontation, or the issue, plainly it must be resolved in favor of those in charge of the office.

6. The inner quote was from Dombrowski v. Pfister, 1965, 380 U.S. 479, at 491–492, 85 S.Ct. 1116, 14 L.Ed.2d 22, an abstention case. With great deference, we suggest the problems of abstention and standing are not necessarily the same.

whether the plaintiff's particular conduct was constitutionally privileged, privileged conduct would not be exempted from prosecution?

The chilling effect may be found in the fact that the statute in terms is overbroadly directed against speech. This was the case in, *e. g.*, Thornhill v. Alabama, *supra*; Winters v. New York, *supra*. See Sedler, *supra*, 71 Yale L.J. 599, 614–25 (1962). In such a situation it may well be anticipated that the authorities, so directed, cannot be counted upon to restrict themselves to clearly legitimate prosecutions. If, on the other hand, the statute is general, and not specifically directed against speech, one must look beyond the statute to the circumstances as a whole in order to determine whether other persons, viewing what the authorities have in fact done, might justifiably apprehend that bona fide attempts on their part to exercise First Amendment rights would be likely to be prosecuted.[7]

In applying this test we do not look at any single matter, but at the overall circumstances. So viewing the case at bar, we do not think it could be fairly said that the statute was being employed to inhibit First Amendment rights. Plaintiffs were accorded throughout broad liberties of speech and association. Their presence was not objected to; their soliciting, their speech, their organizational activities were not interrupted. The sole stricture was against obstruction of the office. In seeking to analogize Brown v. Louisiana, *supra*, plaintiffs overlook that the protesters there were arrested and removed for merely being present. Here plaintiffs were asked only to cease the physically obstructing part of their conduct. The authorities distinguished between permissible, non-disturbing speech, and conduct that they could reasonably feel interfered with the activities of the office.[8]

Plaintiffs accordingly fail to fit even a liberal test of standing. Their *assertion* that their prosecution "restrained [plaintiffs and others] in the exercise of their right to assemble, organize, distribute literature and petition" and that other persons were "being denied access to information which WWRO has sought to make available to them" are mere conclusions of the pleader, unwarranted on the record, in fact and in law.

Because plaintiffs have not shown a violation of their constitutional rights, the complaint must be dismissed.

---

7. We cannot suggest that the courts have adopted this approach. Indeed, one can find a case such as Baker v. Bindner, W.D.Ky., 1967, 274 F.Supp. 658, where the court drew no distinction between statutes addressed to speech and statutes addressed to conduct generally, and granted relief after specifically finding that the police had acted in an exemplary fashion under the circumstances. The issue of standing was not even considered. A *dissenting* judge urged that there should be abstention. In other cases disorderly conduct statutes have been declared unconstitutional on their face without close discussion of the quality of past official conduct. See Landry v. Daley, N.D.Ill., 1968, 280 F.Supp. 969 (incorporating by reference 280 F.Supp. 944–952); Carmichael v. Allen, N.D.Ga., 1965, 267 F. Supp. 985. On the other hand, some cases could be taken to implicitly indicate that when general statutes are under attack there is no standing to assert the First Amendment rights of others. See United States v. Petrillo, *supra;* Sedler, *supra*, 71 Yale L.J. 599, 614–25 (1962). *Cf.* Feiner v. New York, *supra*.

8. For what it is worth we might note that plaintiffs were not automatically proceeded against for disturbing the peace, but were first requested to remove the table, and were given fair warning when they persisted, before the police were called.