**ALBANY WELFARE RIGHTS ORGANI-ZATION et al., Appellants,**

v.

**George K. WYMAN, Individually and as Commissioner of Social Services for the State of New York, et al., Appellees.**

**No. 210, Docket 73–1580.**

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1973.

Decided March 14, 1974.

Marvin N. Karpatkin, New York City, Joel F. Spitzer, Albany, N. Y. (Paul R. Lichterman, Albany, N. Y., Paul G. Chevigny and Eve Cary, New York City, on the brief), for appellants.

Alan W. Rubenstein (Louis J. Lefkowitz, Atty. Gen., Ruth Kessler Toch, Sol. Gen., on the brief), for appellee Wyman.

Condon A. Lyons, County Atty., Albany, N. Y. (Robert E. Harris, Albany, N. Y., of counsel), for appellees Schreck and Jay.

Before LUMBARD and MANS-FIELD, Circuit Judges, and GUR-FEIN,* District Judge.

GURFEIN, District Judge:

This is an appeal from an order of the District Court for the Northern District of New York, Judge Foley, entered on February 12, 1973, denying plaintiffs' motion for a preliminary injunction after a hearing and dismissing the complaint.

Plaintiffs are the Albany Welfare Rights Organization (AWRO) and individual members and welfare recipients. AWRO is a local chapter of the Upstate New York affiliate of the National Welfare Rights Organization, which has some 150,000 members in approximately 850 local organizations throughout all fifty states. At the time of the hearing below, AWRO had approximately 400 members. The organization's purpose is educational and political in that it seeks to inform welfare recipients of their legal rights, to train them to help other welfare recipients in their dealings with the Welfare Department, and to organize them to exert political pressure on behalf of poor people upon local, state, and federal governments.

The controversy in this case arose when the plaintiffs attempted to pass out informational leaflets to welfare recipients inside the County Welfare Center and were forbidden to do so by the defendant Albany County Welfare officials who relied upon discretion conferred upon them by the defendant State Commissioner. This appeal by Albany Welfare Rights Organization and Catherine Boddie is from the District Court's orders under those claims for relief (Second, Fourth and Fifth) which relate directly to the exercise of the right of plaintiffs to distribute leaflets. The

defendants are the State Commissioner of Social Services, the Albany County Commissioner, a deputy commissioner, the supervisor and a caseworker.

Jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1343(3) and (4). We hold that there is jurisdiction under Section 1343(3).

The second claim for relief is based upon alleged violation of the Social Security Act and regulations in that the discretion vested by Commissioner Wyman in the County Social Services Departments to prohibit groups from disseminating information is discriminatory against the plaintiffs. The fourth claim is a constitutional claim alleging that denial to plaintiffs of access to the premises of the Albany County Department of Social Services deprives them of the equal protection of the laws. The fifth claim is that the denial of free access to the premises violates the rights of the plaintiffs to freedom of speech, and the right to assemble, to organize and to petition for redress of grievances in violation of the First and Fourth Amendments. Since we are constrained to reverse on the dismissal of the Fifth Claim, we need not consider the other claims raised.

The Albany County Social Services Department is located in a five-story building in the City of Albany. All the work of the Department employees that involves personal contact with welfare recipients is carried out on the first and third floors, and there are waiting areas on these floors for recipients who come to the Center.[1] The Welfare Department has approximately 400 employees.

All county business is carried out behind partitions. Welfare recipients upon arriving at the building are referred to a particular waiting area depending on the nature of their business.

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. It was stated on the oral argument that the waiting area on the first floor consists of 3300 square feet, and on the third floor,

of 900 square feet. The District Court in its opinion refers to "the waiting room" in the singular, possibly because it deemed the larger waiting room as the only one requiring practical consideration.

There the recipient informs a secretary of his presence and takes a seat in the waiting area.

Every few minutes a welfare department employee comes to the front of the waiting area and shouts out the address of a waiting recipient (to preserve anonymity) and that person then enters the work area through a door to see a caseworker.

As of May 31, 1972, the welfare department had 6,600 cases involving some 20,000 persons. On any given day between 200 and 250 welfare recipients come to the welfare center concerning public assistance alone, excluding those who come for food stamps and medicaid. Most of these persons wait a minimum of an hour and a half before the case is called.

At the end of 1969 members of the Albany Welfare Rights Organization began to go down to the Welfare Center every Monday to meet with Welfare officials and to pass out leaflets to waiting welfare recipients. The leaflets contained legal information about the rights of welfare recipients in relation to the welfare department and information about AWRO and the welfare rights movement. AWRO members would also try to answer welfare recipients' questions about their legal rights or would tell them to come to the AWRO office for help with complicated problems that could not be answered on the spot. People who expressed an interest were encouraged to join the organization.

The weekly distribution of leaflets went on for approximately six months during which time AWRO membership grew heavily. In mid-1970, however, a new policy was instituted by the County Welfare Department, and AWRO members were told that they could not pass out their leaflets inside the welfare center. When told to stop they did so for that day without protest, but they continued to return to the center on a number of occasions and to pass out as many leaflets as they could until someone came

to insist they leave. No arrests were ever made of persons distributing leaflets nor were police called at any time to disperse them.

At the hearing there was no testimony that during the six months that AWRO members handed out leaflets in the welfare center there was any disruption whatever caused by their activities. On the contrary, the testimony tended to establish that distributing leaflets was carried on only in public areas of the building which were separated from areas where county business was carried out. There were some incidents of disruption, but these related to the refusal of county officials to discuss grievances [align] with AWRO, and were not related to distributing leaflets.

The appellees contend, so far as is relevant to this disposition, that (1) neither AWRO nor Boddie has standing to maintain the action; (2) the complaint does not state a constitutional claim against the State Commissioner; (3) subsidiary thereto, appellees contend that a waiting room in the office of a county social service department is not a proper place for a welfare organization to enter for the purpose of distributing leaflets and conduct organizing activities.

As Judge Friendly observed in *Aguayo v. Richardson,* 473 F.2d 1090, 1098 (2 Cir. 1973), cert. denied, *Aguayo v. Weinberger,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974), welfare cases require the courts to "weave our way through a maze of problems relating to standing and jurisdiction." That is also true of cases asserting First Amendment rights brought by associations of people.

While a complaint by an association alleging that its members will be harmed by threatened conduct suffices to give the association standing under the general federal question statute, 28 U.S.C. § 1331, *Aguayo, supra,* 473 F.2d at 1099, that does not determine the $10,000 jurisdictional amount requirement. (*Id.* at n. 13) If we look to the

standing of a welfare organization under the civil rights statute, 42 U.S.C. § 1983, and its jurisdictional implementation, 28 U.S.C. § 1343(3), this Court has held that such an organization may not sue under the Civil Rights Act for the violation of rights of members. *Id.* at 1099–1100.

The District Judge, construing *Aguayo* to be applicable to the facts of this case, held that AWRO had no standing to raise the constitutional claims. We think that AWRO had standing to bring this complaint because the refusal of access alleged involved an abridgement of the constitutional right of association. N. A. A. C. P. v. Button, 371 U.S. 415, 428–429, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963); Louisiana ex rel Gremillion v. N. A. A. C. P., 366 U.S. 293, 296, 81 S.Ct. 1333, 6 L.Ed.2d 301 (1961); Bates v. City of Little Rock, 361 U.S. 516, 523 n. 9, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); N. A. A. C. P. v. Alabama ex rel. Patterson, 357 U.S. 449, 458–460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); see also Smith v. Board of Education of Morrilton School District No. 32, 365 F.2d 770 (8 Cir. 1966). There is sufficient evidence in the record to permit the conclusion that AWRO's efforts to increase its membership were adversely affected by its exclusion from the premises of the Albany County Welfare Department.

Judge Foley, with his customary patience, and in obedience to the suggestion in Negron v. Wallace, 436 F.2d 1139, 1141 (2 Cir.), cert. denied, 402 U. S. 998, 91 S.Ct. 2184, 29 L.Ed.2d 164 (1971), tried to work out a compromise between the parties, but in Judge Foley's words, "the flat rejection was made to allow groups, or any number of A.W. R.O. members, to enter the waiting room of the Albany Department building and pass out leaflets and talk to people waiting on benches to be processed by the Department's case workers, or other employees and solicit them for membership in the A.W.R.O. or discuss with them problems concerning public assistance

that certain of the recipients might be concerned with."

Upon the failure of the negotiations, the District Judge dismissed the complaint, thus sustaining the complete exclusion of AWRO representatives from "the waiting room." We think that a blanket and wholesale ban, in the circumstances, violates the rights of the plaintiffs under the First Amendment as applied to the states under the Fourteenth, and that the decision below was erroneous. We paraphrase the language of Judge Kaufman in Wolin v. Port of New York Authority, 392 F.2d 83, 85 (2 Cir.), cert. denied, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968): "We hold that the [Albany County Welfare Dept.] may not abridge by absolute prohibition the right of political expression. The peaceful activities proposed by [AWRO] are protected against denial by the [Albany County Welfare Dept.], and accordingly, they may be restricted only by regulations narrowly drawn to serve legitimate interests of the general public who use the [County Welfare Center]."

The right of free speech is a fundamental right which is safeguarded against state interference by the due process clause of the Fourteenth Amendment. De Jonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 81 L.Ed. 278 (1937). Though no restrictive state statute is involved, the exclusion of the plaintiffs by the permissive order of the State Commissioner to County Officials constitutes State action. Peaceful distribution of leaflets is a form of communication protected by the First Amendment, and hence, by the Fourteenth. Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L. Ed. 155 (1939); Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). As Chief Justice Hughes said in *Lovell, supra,* "The liberty of the press is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. These indeed have been historic weapons in the de-

fense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest. The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion." 303 U.S. at 452, 58 S.Ct. at 669.

Leaflets are, therefore, within the protection against prior restraint on their distribution, and such restraint constitutes an impermissible restraint under the Constitution, Organization for a Better Austin, *supra*, 402 U.S. at 418, 91 S.Ct. 1575, and comes to the courts with a "heavy presumption" against its constitutional validity. *Id.* at 419, 91 S. Ct. 1575. In the light of the "heavy presumption," there would have to be an extraordinary showing of an invasion of privacy to rebut the presumption. Cf. Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943).

The State is, of course, "free to regulate the time and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience." Cantwell v. Connecticut, 310 U.S. 296, 306–307, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1940). See Cox v. Louisiana, 379 U.S. 536, 554, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). "But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 508, 89 S. Ct. 733, 737 , 21 L.Ed.2d 731 (1969).

We, thus, come to the question whether there is a compelling state interest in the *total* exclusion of the AWRO representatives from the waiting rooms of the County Welfare Center.

The appropriateness of the place for the exercise of the right of free speech and the furtherance of the right of free association as a preliminary to petitioning for redress of grievances turns to some extent "on the relevance of the premises to the protest." *Wolin, supra,* 392 F.2d at 90. Judge Kaufman noted in *Wolin* that there were two ways to find that relevance, where the place represents the object of protest, and where the relevant audience may be found. *Id.*

Here we are not dealing with direct protests but rather with informational activity. In that regard the "relevant audience" factor is compelling. Prospective members of the AWRO and persons who need information about public assistance are best found in the waiting rooms of County Welfare Centers. And it is in that best place that the restrictions on free speech have been imposed in this case.

We must recognize, of course, that the waiting rooms of welfare offices are not "streets, sidewalks, parks and other similar public places [which] are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." See Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 315, 88 S.Ct. 1601, 1606, 20 L.Ed.2d 603 (1968). Nor do they, like bus terminals, so resemble public thoroughfares as to make them appropriate places for the exercise of First Amendment rights. See *Wolin, supra.* As the Court of Appeals for the First Circuit said in Massachusetts Welfare Rights Organization v. Ott, 421 F.2d 525, 527 n. 4: "A welfare office is not to be equated with a public street." Obviously, the constitutional rights asserted may be the subject of regulations to protect the free flow of traffic and the conduct of the county's business.

On this record, however, we are not dealing with the incursion of a mass of people to coerce the public officials in the performance of their duties. There is no plea to be allowed to conduct sitdowns or disruptive meetings. The plea is a narrow one, that a limited number of AWRO representatives, three in number, be permitted to distribute informational literature and to talk to people while they are waiting to consult the county officials. It is in the light of

these modest requests that we must consider whether the waiting room of a welfare office is an appropriate place for the exercise of these constitutional rights.

We think it is. The waiting room is a public place, for all may enter who have public business to transact. It is not a part of the premises which is screened off for the actual conduct of public business and the private interviewing of welfare recipients.

On the one hand, it is not an appropriate place for a picket line or demonstrations. In that sense, it is not a traditional forum of protest. LeClair v. O'Neil, 307 F.Supp. 621 (D.C.Mass. 1969), aff'd, 401 U.S. 984, 91 S.Ct. 1219, 28 L.Ed.2d 524 (1971). On the other hand, a waiting room is a proper place for private conversation with those waiting to be served. Here we apply the distinction between the communication of ideas by conduct and the communication of ideas by pure speech. Cox v. Louisiana, *supra,* 379 U.S. at 555, 85 S.Ct. 453; LeClair v. O'Neil, *supra.* In that respect, we accept as a proper enunciation of relevant principle the conclusion of Judge Pettine in his well-reasoned opinion in Unemployed Workers Union v. Hackett, 332 F.Supp. 1372 (D. R.I.1971), and the dictum of the three-judge court in Hurley v. Hinckley, 304 F.Supp. 704, 711–712 (D.Mass.1969), aff'd sub nom., Doyle v. O'Brien, 396 U. S. 277, 90 S.Ct. 603, 24 L.Ed.2d 469 (1970). See also Indiana Consumers and Workers Union et al. v. Swaim, Civ. No. 72F5 (D.C.Ind., July 12, 1972) (unreported).

The District Court found the "conduct" here significantly different from that described by Judge Pettine in Unemployed Workers Union v. Hackett, *supra.* We believe that in reaching that conclusion, however, the District Court wrongly considered evidence of earlier demonstrations or "confrontations" to be determinative of what we conceive to be an independent right to distribute pamphlets and to engage in peaceable free speech by a limited number of people.

While the engaging by plaintiffs in a series of legal and illegal episodes may at times justify a denial of a temporary injunction until conduct and speech can be sorted out one from the other, which we do not find to be the case here, that affords no basis for denying the right of speech itself by dismissal of the entire complaint. A permission to speak and, peaceably and in a reasonable manner, to distribute leaflets may not be denied as part of a blanket refusal to permit demonstrations and confrontations which occur at the wrong time and place to the disruption of offical business. Judge Foley was right, of course, in recognizing that reasonable regulations may be necessary to further significant governmental interests, see Adderley v. Florida, 385 U.S. 39, 47–48, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), and Grayned v. City of Rockford, 408 U.S. 104, 115, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), but there is a difference between reasonable regulation and total prohibition.

■ The District Court also believed that privacy was a "major factor." We do not consider the right of privacy of the welfare recipients as a compelling consideration against First Amendment rights. We do not suggest that an AWRO representative would have the right to demand the name of a person on the waiting line if he chooses not to give it. But we cannot assume, on the other hand, that everyone on the waiting line would reject all communication with such representative. This is not an intrusion into the home, the church, or the voting booth. It involves simply talking to people who are waiting. Unless there is a showing that the listener has been badgered to the point of being made a captive, this intrusion on privacy in a public waiting room is slight against the heavy presumption in favor of free speech and assembly, which are preludes to the orderly redress of grievances. See Public Utilities Commission v. Pol-

lak, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952).

This court is mindful of, and stresses, the need for quiet and decorum in the conduct of the state's business. We do not tolerate pressures on caseworkers or administrative personnel any more than we would sanction pressures on judges or jurors. This appeal, however, does not involve protest. It involves the orderly distribution of information, without coercion, to welfare recipients. Any order issued may enjoin the making of excessive noise or engaging in other disruptive activity. The work of the welfare department must go on without disturbance.

We hold, in substance, that, since the constitutional rights of the plaintiffs have been impaired, the complaint should be reinstated so far as the constitutional free speech claim is concerned. We hold that, at least one person[2] should be permitted in one waiting room as the representative of AWRO with the privilege of distributing printed material and of conversing with willing welfare recipients.

The District Court should determine, in conformity with this opinion, the number of AWRO representatives, if more than one, to be given access under reasonable conditions to provide a peacecial business.

Having reinstated the Fifth Claim of the complaint, we need not decide now whether the plaintiffs will be entitled to money damages upon a trial.

Dismissal of Fifth Claim of the Complaint reversed and remanded; order denying preliminary injunction reversed with direction to grant it in conformity with opinion.[3]

---

2. We have used the term "at least one person" for the reason that Judge Foley had indicated in his findings that two or three individuals might create a disruptive influence.

3. The injunction may provide that the plaintiffs will remove all discarded material, and that the AWRO representatives clearly designate themselves in an appropriate manner as not being employees of the Albany County Welfare Department.