VULCAN SOCIETY OF WESTCHESTER COUNTY et al., Plaintiffs,

v.

FIRE DEPARTMENT OF the CITY OF WHITE PLAINS et al., Defendants.

No. 78 Civ. 911 (RWS).

United States District Court,
S. D. New York.

April 10, 1979.

Teitelbaum & Hiller, Belson, Connolly & Belson, New York City, for plaintiffs by Richard J. Hiller, Herbert Teitelbaum, John J. Connolly, New York City, of counsel.

Eugene J. Fox, Corp. Counsel, Yonkers, N. Y., Paul B. Bergins, Corp. Counsel, White Plains, N. Y., McGovern, Connolly & Davidson, New Rochelle, N. Y., Rains, Pogrebin & Scher, Mineola, N. Y., Louis J. Lefkowitz, Atty. Gen., New York City, for defendants by Mark C. Rutzick, Asst. Atty. Gen., New York City, of counsel.

## OPINION

SWEET, District Judge.

This is an action brought by several black firefighters, an organization of black firefighters (the "Vulcan Society") and others who have been denied employment as firefighters to seek redress of various alleged discriminatory policies and practices within the fire departments of four Westchester County municipalities, White Plains, Mount Vernon, New Rochelle and Yonkers (collectively "the municipal defendants") and by the New York State Department of Civil Service ("DCS"). Defendants include the fire departments and civil service commissions of the municipal defendants, the DCS and various individuals employed by these defendants during the period relevant to this action.[1] Relief is sought pursuant to 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 2000d et seq. ("Title VI"), 42 U.S.C. § 1981, 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution; jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

### History of This Proceeding

This action was commenced on March 1, 1978. On April 7, 1978 and April 12, 1978 certain stipulations as to the time of the defendants to answer, the filling of vacancies in the fire departments and discovery were entered into between the parties. On

1. A more detailed review of the complaint and the parties to this action is set forth in this court's decision with respect to plaintiffs' motion to amend the complaint. The DCS and individual state defendants are hereafter collectively referred to as the "state defendants."

April 17, 1978, prior to service of any responsive pleading by any defendant, the plaintiff filed an amended complaint pursuant to Rule 15(a), Fed.R.Civ.P. Each of the defendants submitted answers to the amended complaint in May, 1978. On May 31, 1978 and June 6, 1978 certain other stipulations were entered into with respect to the filling of certain positions in the New Rochelle and Yonkers fire departments, respectively. On June 6, 1978 a pre-trial conference was held before this court, at which time the parties agreed that the plaintiffs' proposed motion for class certification and defendants' proposed motion for summary judgment, and related discovery, would be on a joint briefing and argument schedule.[2]

The original briefing schedule set July 27, 1978 as the return date for the motions then anticipated. Due to the complexity of the motions filed, requests for additional time to submit opposition and reply papers and the desire of the parties to file additional motions, this date was adjourned to August 10, 1978. On that date this court heard argument on the six motions then before it: plaintiffs' motions (1) to amend their complaint, (2) for class certification and (3) seeking certain discovery, the municipal defendants motion (4) for summary judgment, the State defendants' motion (5) for summary judgment and White Plains' motion (6) for a severance. These motions are the subject of this opinion.

## I. Motion to Amend the Complaint

The complaint, as amended as a matter of course on April 17, 1978, alleged a pattern and practice of discrimination in the several fire departments by the defendants with respect to (i) various written examinations prepared by the DCS and utilized by the municipal defendants as the primary criteria for hiring and promotion, (ii) the requirement of a high school diploma or equivalency diploma as a condition of employment, (iii) the policy that a prior conviction will or may bar employment, (iv) recruitment practices, (v) conditions of employment, (vi) discouraging blacks from applying for employment and from seeking promotions and (vii) the use of undefined subjective criteria in choosing candidates for employment and assignment and promotion. A summary of the claims of the individual plaintiffs and the Vulcan Society is set forth in the margin.[3] Plaintiffs seek class action certification, declaratory and injunctive relief, an award of damages and costs of maintaining this action along with reasonable attorneys' fees.

By motion filed July 18, 1978, plaintiffs moved to amend and supplement the complaint and to join an additional plaintiff and defendants. On July 28, 1978, prior to argument on the aforesaid motion, plaintiffs filed a similar motion, incorporating and expanding the prior motion, which was then withdrawn. By this superceding motion plaintiffs seek to add (i) four plaintiffs,[4] (ii) eight individual Yonkers defend-

2. By motion heard by this court on June 29, 1978, the labor organization for the firefighters in each of the municipalities here involved moved to intervene as a matter of right. Fed. R.Civ.P. 24(a)(2). By opinion of this court dated July 24, 1978, such motion was granted.

3. Those alleging personal injury as a result of promotional level discrimination are as follows: Hubert M. Robinson, Shearin O. Higgs and Clarence W. High III as to White Plains; Joseph Miles as to Mount Vernon; James Garland as to New Rochelle; and Buel McQuay as to Yonkers. Those alleging personal injury as a result of entry level discrimination are Henry Cleveland and Robert P. Gray III, both with respect to Mount Vernon. The Vulcan Society alleges that it has been deprived of members as a result of defendants' discrimination in recruitment and hiring.

4. Three additional plaintiffs allege discrimination as a result of the May 20, 1978 examination: Ronald O. Archer with respect to White Plains, Larry M. Moyer as to New Rochelle and Paul D. McQuay as to Yonkers. Michael B. Smith alleges discrimination by Mount Vernon stemming from its policy of disqualifying persons with prior criminal records. Moyer also alleges he would not be eligible for employment even had he passed the exam since he is unable to swim and such is a condition of employment of the City of New Rochelle. Paul McQuay similarly alleges prospective discrimination since he would not be eligible for employment due to the high school diploma or equivalency requirement of Yonkers.

ants,[5] (iii) two individual New Rochelle defendants,[6] (iv) the cities of White Plains, Mount Vernon, New Rochelle, and Yonkers,[7] (v) an allegation of conspiracy and (vii) certain other allegations including, *inter alia*, claims of discrimination arising from the entry level examination prepared by the DCS and administered by each of the municipal defendants on May 20, 1978.[8] Defendants oppose the amendments sought.

Rule 15(a) provides that except as to amendments allowed as a matter of course, "a party may amend his pleading only by leave of [the] court . . . ; and leave shall be *freely given* when justice so requires." (Emphasis added.) Rule 15, Fed. R.Civ.P. The Supreme Court, in interpreting this phrase, has set forth the standard to be applied by this court:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The defendants assert that this motion, coming on the heels of their motions for summary judgment and for severance and plaintiffs' motion for class certification, is dilatory, prejudicial and in bad faith. However, in the context of the prior proceedings in this ac-

tion (*see* discussion *infra*), especially considering the time constraints under which all the parties were working, this assertion is ill-founded.

 This motion, made within four months of the original complaint, is the first time leave of the court to amend has been sought. Many of the amendments, including those relating the May 20, 1978 exam, are as a result of information recently obtained by plaintiffs. This court is unable to find any bad faith or dilatory motive on the part of plaintiffs or their counsel. Discovery is at its threshold stage and allowing the amendments will not delay this proceeding. *See generally Lewis v. Marine Midland Grace Trust Co. of N. Y.,* 63 F.R.D. 39 (S.D.N.Y.1973). Even to the extent it may be said the amendments seek to cure deficiencies in the original complaint, such is not alone a basis for their denial. *See Mooney v. Vitolo,* 435 F.2d 838 (2d Cir. 1970).

Further, the defendants have not satisfied this court that they will be sufficiently prejudiced to justify a denial of the motion. Having here reviewed and decided all the pending motions in the context of the amendments here allowed (*see* discussion *infra*), no additional briefing by the defendants will be required or necessary. The defendants were not surprised by certain of the amendments sought, and there will not be any substantial adverse affect to the trial preparations. The requirements of Rule 15(a) have been satisfied.

 However, compliance with Rule 15(a) does not end the inquiry here required. Amendments "are not allowed

---

5. Seymour Scher, Clifford O'Key, J. Emmett Casey, Vincent R. Castaldo and Pat T. Ravo, City Managers; Richard F. Smith, Deputy Fire Chief; Frederick S. Carey, President, Yonkers Civil Service Commission; Joan Pincus, Director of Yonkers Civil Service Commission.

6. C. Samuel Kissinger, City Manager and John F. Fosina, Chairman of Civil Service Commission.

7. The addition of these cities is sought in light of the recent Supreme Court decision in *Monell*

*v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), allowing the recovery of damages from municipalities in actions pursuant to 42 U.S.C. § 1983. Considered in this context, there can be no claim of bad faith or dilatory tactics and the amendment will be allowed.

8. In addition to such allegations by the plaintiffs set forth in footnote 4 *supra*, Henry Cleveland also alleges discrimination as a result of the May 20th exam.

where . . . a party seeks to assert a claim that lacks merit." *Friedman v. Chesapeake and Ohio Railway Company*, 261 F.Supp. 728, 734 (S.D.N.Y.1966), *aff'd*, 2 Cir., 395 F.2d 663, *cert. denied* 393 U.S. 1016, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969).

To avoid a useless act, then, a proposed amendment must be measured in terms of its ability to withstand a motion to dismiss, and therefore, the legal sufficiency of the presently proposed amendment must be examined in that light.

*Hodnik v. Baltimore & Ohio Railroad*, 54 F.R.D. 184 (W.D.Pa.1972). Therefore, an individual determination as to the propriety of the amendments sought is here appropriate.

## A. *Additional Plaintiffs and the May 20, 1978 Examination*

Whether or not the amendment as to the additional plaintiffs will be allowed must be determined in accordance with the provisions of Rule 20, Fed.R.Civ.P. Rule 20(a) provides, in pertinent part, as follows:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences *and* if any question of law or fact common to all these persons will arise in the action. (Emphasis added.)

Defendants assert neither requirement of the rule has been met.

■ Proposed plaintiffs Archer, Moyer and P. McQuay allege discrimination based upon the May 20, 1978 exam. Defendants contend that this exam was separate and distinct from the exams addressed in the original complaint, do not arise out of the same series of transactions or occurrences as the other exams and that there are no common questions of law or fact. Plaintiffs assert that the May 20th exam is similar, in purpose and effect, to the other exams and therefore satisfies the requirements of Rule 20.

There is no rigid rule as to what constitutes the same series of transactions or occurrences for purposes of joinder under Rule 20. *See Hall v. E. I. Du Pont De Nemours & Co.*, 345 F.Supp. 353, 381 (E.D. N.Y.1972). However, the requirements of Rule 20 should be given a liberal interpretation. *See generally Id.*; *Hercules Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101, 106 (S.D.N.Y.1976).

Each of the plaintiffs alleges a pattern and practice of discrimination by the defendants, such conduct including the use of exams which discriminate against blacks. These proposed plaintiffs allege that the May 20th exam is but one of the many exams possessing no validity and adversely affecting blacks applying for positions as firefighters. The plaintiffs have, therefore, sufficiently alleged that the May 20th exam is part of a series of exams or occurrences, of similar type, preparation and construction, and with similar purpose and goal. Based upon these alleged connections between the exams, as well as the common factors supplied by the DCS' role as preparer and their use by each of the municipalities, this first requirement is satisfied. *Cf. United States v. Mississippi*, 380 U.S. 128, 142–43, 85 S.Ct. 808, 13 L.Ed.2d 717 (1964). The second requirement, the common question of law or fact, is derived from the alleged discriminatory policy and impact with respect to these exams. *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974). Therefore, joinder of these three plaintiffs is proper.[9]

■ Proposed plaintiff Smith, unlike the other plaintiffs, alleges no discrimina-

---

**9.** Although Rule 20 is satisfied, defendants seek to dismiss the Title VII claims of these three plaintiffs and plaintiff Cleveland arising from the May 20th exam on the ground that any alleged discriminatory practice arising from this exam has not been submitted to the EEOC or the subject of an investigation. However, since the filing of the motions herein the claims have been submitted to the EEOC and all plaintiffs have received right to sue letters. Therefore, the jurisdictional prerequisites have been satisfied. *See generally Weise v. Syracuse University*, 522 F.2d 397, 413 (2d Cir. 1975) and discussion *infra* re motion for summary judgment on Title VII claims.

tion as a result of the DCS examinations. Instead, his claim is based upon the alleged discrimination by Mount Vernon's use of conviction records as a bar to employment. However, the complaint does allege that each municipal defendant bars employment as a firefighter to anyone with a conviction record and that such practice is but one of many in a pattern of discrimination against blacks, including the use of the DCS exams and the requirement of a high school diploma. A municipal policy purportedly designed to discriminate against blacks in employment is no different than an alleged state-wide or company-wide system having similar goals and effect and therefore arises out of the same series of transactions or occurrences. *See United States v. Mississippi, supra* ; *Mosley v. General Motors Corp., supra*, 497 F.2d at 1333–34. Similarly, the requirement of a common question of law of fact has been satisfied. The fact that Smith alleges discrimination in hiring as a result of a practice different than the other plaintiffs allege is immaterial with respect to this determination. The discriminatory policy and conduct here alleged underlies the ability of each plaintiff to recover and supplies the common questions necessary to satisfy the Rule.[10] *See id.*

B. *Additional Defendants*

■ Rule 20(a), Fed.R.Civ.P., provides as follows:

All persons (and any vessel, cargo, or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded.

Defendants assert that the requirements of this rule have not been satisfied. Plaintiffs contest this and allege that each of the proposed individual defendants [11] are jointly and severally responsible with one or more of the present defendants for the policies and practices which are the subject of the complaint. Further, the amended complaint specifically alleges that Kissinger and Fosina are responsible for the policies and practices of the New Rochelle (i) departments and agencies and (ii) Civil Service Commission as they pertain to the fire department, respectively, and that the proposed Yonkers defendants are responsible for selection of employees to fill job vacancies. Therefore, plaintiffs have alleged a sufficient nexus between the proposed defendants and the other defendants, and the claims asserted against each, to satisfy the requirements of Rule 20(a).

Defendants also allege generally that the additional defendants are not indispensible parties nor are they necessary for plaintiffs to receive adequate and complete relief. However, joinder is not sought pursuant to Rule 19, Fed.R.Civ.P., but pursuant to Rule 20(a), which this court has determined to be satisfied.

Further, defendants allege generally that the additional defendants have little to do with the present administration of their respective municipality or are agents of a more appropriate officer or agency and that many of the proposed defendants were not employed by or associated with their respective municipality at the times relevant to this action. These contentions are generally contested by the plaintiffs and thereby give rise to disputed factual contentions with respect to the extent and nature of

10. Although Smith's claims arguably only satisfy the aforementioned requirements of Rule 20(a) as to joinder with the Mount Vernon plaintiffs, a plaintiff need not be interested in obtaining all the relief demanded. Rule 20(a), Fed.R.Civ.P. Further, joinder is proper in light of this court's decision herein limiting class

certification and severing the trial as to certain issues. *See* discussion *infra* re motions for severance and class certification.

11. *See* footnote 7 *supra* re addition of the four cities as defendants and footnotes 5 and 6 re the individual defendants.

each proposed defendants' involvement, if any, in the policies and practices assailed.

■ Lastly, defendants contend that this court lacks jurisdiction over many of the additional defendants with respect to the Title VII cause of action since many were not charged in the EEOC complaints for which right to sue letters have been issued. Title VII provides that "a civil action may be brought against the respondent named in the [EEOC] charge . . .". 42 U.S.C. § 2000e–5(f)(1). However, it is not necessary that each and every defendant be named in the EEOC charge for that defendant to be a proper Title VII defendant in an action. *See Schick v. Bronstein*, 447 F.Supp. 333, 336 (S.D.N.Y.1978). If, as plaintiffs allege, there was "substantial identity" between those named in the EEOC charge and these defendants (*see Stith v. Manor Baking Co.*, 418 F.Supp. 150 (W.D.Mo.1976)) and these defendants had notice of the EEOC proceeding (*see Schick, supra*), these defendants need not have been named in the EEOC charge to be properly before this court. Therefore, upon this motion to amend the complaint, there are sufficient factual disputes as to each of the defendants to allow the amendment adding these defendants to extend to the Title VII claims. *Cf. Byron v. University of Florida*, 403 F.Supp. 49 (N.D.Fla.1975).

The motion to join additional defendants is hereby granted. A resolution of the aforementioned factual questions must await a trial on the merits or a motion for summary judgment addressed to each defendant separately.

## C. *Conspiracy Allegations*

■ Plaintiffs, in the amended complaint, allege that the municipal defendants engaged in a combination, scheme and conspiracy to perpetrate the use of discriminatory hiring and promotional practices and, with the state defendants, conspired to establish and perpetrate the use of discriminatory hiring practices. Defendants oppose this amendment on the basis of it being a generalized allegation of conspiracy and therefore insufficient to support a civil

rights conspiracy action. The amendment will not be allowed.

The complaint sets forth nothing but generalized, unsupported allegations of conspiracy which can be characterized as nothing more than conclusory. A complaint alleging a conspiracy to deny individuals their constitutional rights must

> set forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff.

*Martin Hodas, East Coast Cinematics v. Lindsay*, 431 F.Supp. 637, 643–44 (S.D.N.Y. 1977) *quoting Hoffman v. Halden*, 268 F.2d 280, 295 (9th Cir. 1959). This standard has not been satisfied here. Although the affidavit in support of this motion states that the delay in alleging a conspiracy was, in part, based upon recent discovery taken in this action, plaintiffs fail to support their allegations with any factual details or specific conspiratorial acts of the defendants. *See generally Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972); *Morpurgo v. Board of Higher Education in City of New York*, 423 F.Supp. 704, 713–14 (S.D.N.Y.1976). Allegations of common usage by these separate municipalities of a state-wide exam and common requirements of a high school diploma and the absence of any conviction record do not warrant even an inference that such was as a result of a conspiracy among these defendants. The allegation appears to be nothing more than an attempt to establish a connection between the defendants in support of the motion for class certification. This will not be allowed.

## II. *Motion for Severance*

■ The City of White Plains Fire Department, Alfred Del Vecchio, John Dolce, John Gapco, William McMahon, Victor S. Behow and Josephine J. Gambino (the "White Plains defendants") have moved, pursuant to Rule 21, Fed.R.Civ.P., to sever the cause of action as to them on the

ground that Rule 20(a), Fed.R.Civ.P., has not been satisfied. These defendants assert that no claim against them arises out of the same transaction, occurrence or series of transactions or occurrences as the claims against the other defendants.

As stated above, there is no rigid rule as to what constitutes the same transaction or occurrence. *See Hall v. Du Pont, supra*, 345 F.Supp. at 381. Further, Rule 20(a) requires only that there be asserted a minimum of one claim against all the defendants. The DCS examinations, including the one given on May 20, 1978, are alleged to be used by the White Plains defendants and the other municipalities. As previously discussed, plaintiffs allege that these exams are not separate and distinct, but are interrelated; therefore, the requirements of Rule 20(a) are satisfied. (*See* discussion, *supra*, re Motion to Add Plaintiffs.)

Further, principles of trial convenience and efficiency weigh in favor of denying this motion. *See generally Nagler v. Admiral Corporation*, 248 F.2d 319, 327 (2d Cir. 1957). The examinations are the main thrust of the complaint and therefore override the consideration that certain factors may apply to one municipality only. However, since at this stage of the proceedings it appears to this court that the overriding, if not the only, element binding the municipalities together in this action is the DCS examinations, and in view of the determination herein as to class certification (*see* discussion *supra* ), separate trials will be had as to those issues or claims not common among all the defendants.[12] *See* Rules

23(d)(1) and 42(b), Fed.R.Civ.P. At present this court is inclined to try jointly only the claims and issues with respect to the DCS examinations. A final determination must await the completion of discovery and the submission of a pre-trial order to this court.

### III. *Municipal Defendants' Motion for Summary Judgment*

The municipal defendants have jointly moved for summary judgment on a variety of grounds addressed to separate aspects of the complaint. The state defendants have also moved for summary judgment, which is treated separately herein. The motions will be considered, to the extent applicable, in light of the amendments to the complaint here allowed.[13]

### A. *Standing of the Vulcan Society*

 Defendants contest the standing of the Vulcan Society to maintain this action, asserting that Vulcan has no derivative standing from its members to enforce civil rights statutes (*see Aguayo v. Richardson*, 473 F.2d 1090, 1100 (2d Cir. 1973)) and that it has no standing to sue in its own behalf. Plaintiffs contend that Vulcan has standing under either theory: to sue in its own right pursuant to the holding in *Albany Welfare Rights Organization v. Wyman*, 493 F.2d 1319 (2d Cir. 1974) or on behalf of its members pursuant to the language of the Supreme Court in *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). It is the opinion of this court that Vulcan has pleaded a claim to sue in its own right sufficient to withstand this motion.[14]

---

**12.** Therefore, the results will differ little, if at all, from granting severance to each defendant and then consolidating the common questions pursuant to Rule 42(a), Fed.R.Civ.P., as requested by the White Plains defendants. The denial of severance is the appropriate avenue to take, since it will reduce the overall pre-trial procedures and hardships.

**13.** By the amended complaint, there is an entry level plaintiff from each of the defendant municipalities. Therefore, as to the request for summary judgment by those cities from which there previously was no entry level plaintiff, the motion is denied.

**14.** It should be noted that this court is persuaded that, pursuant to *Warth v. Seldin, supra*, Vulcan could sue derivatively, although its claims in such an action would be limited to the claims which its members could have had. The Supreme Court in *Warth* stated:

Even in the absence of injury to itself, an association may have standing solely as the representative of its members. *E.g., National Motor Freight Assn. v. United States*, 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963). The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case of controversy. *See Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d

The Second Circuit held in *Albany Welfare* that the efforts to increase the membership of the association there involved was adversely affected by the exclusion of its members from the premises of the Albany County Welfare Department. *Albany Welfare Rights Organization v. Wyman, supra* at 1322. This affected the association's First Amendment rights and therefore came within the ambits of § 1983. Here the complaint alleges injury to the ability of the Vulcan Society to obtain new members as a result of the acts of the defendants. Further plaintiffs allege that the interests Vulcan here seeks to protect are within the zone of interests to be protected by the statutes under which this action has been brought (*see generally United States v. SCRAP*, 412 U.S. 669, 686–90, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1972)), as well as alleging injuries to the individual plaintiffs themselves.[15] This situation is therefore similar to that before the Tenth Circuit in *Chicano Police Officers' Association v. Stover*, 526 F.2d 431 (10th Cir. 1975), *vacated on other grounds*, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (1976). As in *Chicano*, the allegations herein are not illusory; Vulcan has submitted the affidavit of its President Joseph Miles, a named plaintiff herein, alleging that a substantial portion of blacks obtaining employment in the defendant fire departments become members of the Vulcan Society.[16] "The Association therefore has a direct stake, independent of its members' rights under the Civil Rights Act, in challenging barriers against employment of those from whom it might well enhance its membership and resources to attain its goals. *Warth v. Seldin, supra*, 422 U.S. 511, 95 S.Ct. 2197, [45 L.Ed.2d 343]; *Albany Welfare Rights Organization v. Wyman*, 493 F.2d 1319, 1322 (2d Cir.)". *Id.* at 436. *See also EEOC v. Rinella*, 401 F.Supp. 175, 185 (N.D.Ill.1975).

Furthermore, the affidavits submitted allege that a principal aim of the Vulcan Society is the very subject of this suit, to achieve equal employment opportunities for blacks in the fire departments of Westchester County and that the elimination of such discrimination will provide the benefits of interracial work to the members of the respective fire departments. This is similar to the claim under Title VII set forth by the plaintiff association in *LULAC v. City of Santa Ana*, 410 F.Supp. 873, 889–91 (C.D. Cal.1976), wherein the court held that even though the plaintiff association was not an object of the discrimination, it was nevertheless an "aggrieved" person within the meaning of Title VII. The goal there sought, an upgrading of the police and fire services in the community, which is similar to the objectives here, was sufficient to confer standing.

---

636 (1972). The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. *Id.*, at 734–741, 92 S.Ct., at 1365–1369. So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.
*Warth v. Seldin, supra*, 422 U.S. at 511, 95 S.Ct. at 2211–2212. The nature of the claim and the relief here sought, primarily injunctive and prospective, would not require individual participation of each injured party. To the extent any claim for damages would be dependent upon individual proof of injury, such claims only would not be maintainable by Vulcan. *See id.* 422 U.S. at 515–16, 95 S.Ct. 2197.

**15.** The standard set forth in *Warth v. Seldin, supra*, 422 U.S. at 511, 95 S.Ct. at 2211, is here satisfied:

> There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy. Moreover, in attempting to secure relief from injury to itself the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties. (Citations omitted.)

**16.** There are presently eight members of the Vulcan Society. Upon information and belief, plaintiffs claim there are 13 black members of the defendant fire departments, of which six are members of the Vulcan Society.

It is to say that when LULAC states that one of its interests in bringing the lawsuit is that if it prevails public safety services in Santa Ana will be improved, it calls into play considerations which clearly were within the "zone of interests" contemplated by the Civil Rights Act of 1964. (Footnote omitted.)

*Id.* at 890. *See also Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) and the policy arguments there elucidated. Therefore, based upon all of the foregoing, the Vulcan Society has standing sufficient to maintain its claims.

B. *Standing of Individual Plaintiffs*

Defendants next contend that the individual plaintiffs do not have standing to sue any municipal defendant other than those whose examinations they took. The allegation, therefore, is not that any of the plaintiffs individually have no standing to sue, but that they should not be grouped together. This aspect of the motion for summary judgment, asserting the individuality of each municipality and the want of interrelatedness among the plaintiffs, is properly part of the motion for class certification and will be considered in that context.

C. *Propriety of the Claims Under the Fourteenth Amendment, § 1981 and Title VI*

Defendants have also moved for summary judgment on the ground that the plaintiffs have no right to sue under the Fourteenth Amendment, Title VI or 42 U.S.C. § 1981. Since the plaintiffs do allege a sustainable cause of action under Title VII and 42 U.S.C. § 1983,[17] whether or not the action is maintainable under these provisions is primarily a matter of academic interest and as to the Fourteenth Amendment and Title VI claims will not be addressed at this time. *See generally Everett v. Riverside Hose Company No. 84 Inc.*, 261 F.Supp. 463, 466 (S.D.N.Y.1966). There is sufficient controversy with respect to whether a cause of action is maintainable

under both the Fourteenth Amendment and 42 U.S.C. § 1983 (*see* per curiam and concurring opinions in *Turpin v. Mailet*, 591 F.2d 426 (2d Cir. 1979)) and whether a private right of action exists under Title VI (*see Regents of the University of Calif. v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974); *Cannon v. University of Chicago*, 559 F.2d 1063 (7th Cir. 1976), *cert. granted*, 438 U.S. 914, 98 S.Ct. 3142, 57 L.Ed.2d 1159 (1978), *argued* (1979)) for the decision to await a later date when these issues may be clarified by this Circuit or the Supreme Court. As to the claim pursuant to 42 U.S.C. § 1981, plaintiffs have sufficiently alleged that contracts are involved in the employment challenged and that the amount in controversy as to each plaintiff exceeds $10,000 so as to withstand this motion. *See generally St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

D. *Statute of Limitations*

Defendants seek summary judgment on plaintiffs' claims under Title VI, the Fourteenth Amendment, § 1981 and § 1983 on the ground that the applicable statute of limitation expired prior to the institution of this action. There is no specific federal statute of limitation with respect to claims under the aforementioned statutes or the constitution; therefore

[i]n the absence of a federal statute of limitations the federal courts borrow the state statute of limitations applicable to the most similar state cause of action. *Campbell v. City of Haverhill*, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895); *U.A.W. v. Hoosier Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). That is true in federal civil rights actions. *Swan v. Board of Education*, 319 F.2d 56, 59 (2 Cir. 1963); *Ortiz v. LaVallee*, 442 F.2d 912 (2 Cir. 1971).

---

**17.** Although defendants do seek dismissal of the 1983 and Title VII claims on other grounds, this court has determined that dismissal is not here warranted. *See* discussion *infra.*

*Kaiser v. Cahn*, 510 F.2d 282, 284 (2d Cir. 1974); *see also Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1974).

 Defendants contend that the statute of limitations most applicable under the laws of New York, the situs of this court's forum, is the one year period set forth in the *New York Human Rights Law, N.Y. Exec. Law* §§ 290 *et seq.* However, this circuit has repeatedly held that the applicable statute of limitations in federal civil rights actions brought in New York is the three year period provided for by C.P.L.R. § 214(2). *Kaiser v. Cahn, supra* ; *Cates v. TWA*, 561 F.2d 1064, 1067 n.4 (2d Cir. 1977). Defendants have set forth no convincing argument why this precedent should be disturbed and the three year statute will be applied.[18]

### E. *Good Faith and Intent*

 Defendants seek summary judgment on plaintiffs' claims under the Fourteenth Amendment, Title VI, § 1981 and § 1983 alleging that they have acted in good faith and without an intent to discriminate.[19] However, plaintiffs have sufficiently placed in issue the elements of good faith and intent to preclude summary judgment on this basis.[20] These are issues of fact which must await a trial on the merits.[21]

### F. *Eleventh Amendment*

 Defendants seek summary judgment as to plaintiffs' claims for damages under the Fourteenth Amendment, Title VI, § 1981 and § 1983 on the ground that the municipal defendants are so closely linked to the State of New York as to bring them within the protections afforded by the Eleventh Amendment. The plaintiffs contend that the Eleventh Amendment does not extend to these municipal corporations or their sub-divisions. This dispute is not ripe for resolution, since whether or not each municipal defendant is an alter ego or arm of the State and within the coverage of the Eleventh Amendment is a question of fact whose resolution depends upon the extent of each municipality's financial, political or other involvement with, and relation to, the State.[22]

### G. *Title VII*

Defendants have asserted several grounds for summary judgment, in whole or in part, as to plaintiffs' claims pursuant to Title VII of the Civil Rights Act of 1964. Each will necessarily be considered separately.

#### 1. *Entry Level Discrimination*

Defendants seek summary judgment as to the claims of those plaintiffs who assert

---

**18.** Defendants seek dismissal as to the Mount Vernon defendants, alleging that even the three year limitation has not been satisfied as to this municipality. The basis for this contention is that the complaint alleges that the examinations offered by Mount Vernon, and here at issue, were administered, and the results known, more than three years prior to the institution of this action. However, the complaint, as amended, alleges continuing discrimination by Mount Vernon, including injury as a result of a 1977 promotional exam and a 1978 entry level exam, both well within the applicable time period.

**19.** Although the parties have placed in issue whether intent is a requisite element for a violation of § 1981, such issue need not be resolved at this juncture.

**20.** Similarly placed in issue is whether or not the examinations in question have a discriminatory impact.

**21.** For similar reasons, the issues with respect to intent as to the Title VII claims must await a trial on the merits.

**22.** This court does note that the protections of the Eleventh Amendment generally do not extend to municipal corporations. *See Mt. Healy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Acha v. Beane*, 438 F.Supp. 70, 78 n.3 (S.D.N.Y.1977); *aff'd*, 570 F.2d 57 (2d Cir. 1978). However, the Supreme Court in *Monell, supra*, did recognize that local government units can be considered part of the state. 436 U.S. 658, 690, n.54, 98 S.Ct. 2018, 2035 n.54 (1978). This court also notes that the protection afforded the state under the Eleventh Amendment is unsettled. *See Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (opinion and concurring opinion).

entry level discrimination on the basis that these plaintiffs have failed to comply with Title VII jurisdictional requirements. This motion is premised upon two grounds: (i) that the only named plaintiffs with standing to challenge the entry level examinations have not received right to sue notices and (ii) that these plaintiffs did not timely file charges with the EEOC.

As to the first ground, plaintiffs Gray and Cleveland were issued right to sue notices by the United States Department of Justice on November 9, 1978. Although subsequent to the institution of this action, this court cannot in reality ignore that these plaintiffs have now complied with this requirement of Title VII. To dismiss this action just to have it reinstituted would fly in the face of justice and judicial economy. These notices will be considered and therefore this prerequisite has been satisfied. See generally Weise v. Syracuse University, 522 F.2d 397, 413 (2d Cir. 1975).

Further, the amended complaint herein allowed has added three entry level plaintiffs who took and failed the May, 1978 examination; these plaintiffs have alleged discrimination on the basis of such exam and during the pendency of these motions have received right to sue notices. Therefore, all entry level plaintiffs have satisfied this requirement.

As to the second ground, the plaintiffs contend that the charges filed by Gray[23] and Cleveland with the EEOC were timely since the violations by the defendants were of a continuing nature.[24] The contention is that the examinations and the hiring and promotions flowing from the results of these exams were not separate and distinct, but integral parts of an ongoing pattern and practice of discriminatory conduct by each municipality.

This is not a situation in which the allegation of discrimination is based solely upon a one time refusal to hire.[25] Further, plaintiffs' allegation of continuous conduct is not premised upon an allegation of continuing effect or impact from such completed conduct as a refusal to hire. Rather, the allegation is that the conduct itself was and is of a continuing nature; i. e., that the examinations were but one part of an unlawful pattern and practice of discrimination by each municipality against blacks, and continuing to the time of filing the charges with the EEOC and beyond. Therefore, the situation alleged here is similar to that which existed in Watson v. Limbach Co., 333 F.Supp. 754 (S.D.Ohio 1971) and Jamison v. Olga Coal Co., 335 F.Supp. 454, 458–59 (S.D.W.Va.1971), both cited with approval in Kohn v. Royall, Koegel & Wells, 59 F.R.D. 515, 519 (S.D.N.Y.1973), appeal dismissed, 496 F.2d 1094 (2d Cir. 1974). See also Acha v. Beame, 570 F.2d 57, 65 (2d Cir. 1978); Egelston v. State University College at Genesco, 535 F.2d 752 (2d Cir. 1976). This is not merely a conclusory allegation, but one asserted in the charges with the EEOC and supported herein by affidavit. The plaintiffs here should at least be given an opportunity " 'to prove that the alleged discrimination is of a continuous and ongoing variety.' " Kohn, supra at 519, quoting Watson v. Limbach Co., supra, 333 F.Supp. at 766–67. Although defendants contest the interrelatedness of the examinations, the nexus between the exams themselves

---

**23.** Besides the 1974 examination which is the subject of this motion, Gray has alleged discrimination based on a February, 1977 examination. Defendants do not contest the timeliness of his filing of the charges with the EEOC as to this exam.

**24.** Summary judgment on the basis of timely filing of the charges with the EEOC could relate to the plaintiffs that were added pursuant to the Amended Complaint. Although it appears to this court that this requirement has been satisfied as to these plaintiffs, leave is hereby granted to the defendants to move within 30 days of the date of this opinion to contest the timeliness of their filing.

**25.** It has been held that a "discriminatory refusal to hire, . . . without more, is a discreet and completed unlawful act . . . even if a complainant continues to suffer the effects of the discriminatory conduct . . . ." (citations omitted) (emphasis added). Carter v. Delta Airlines, Inc., 441 F.Supp. 808, 812 (S.D. N.Y.1977); see also United Airlines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

and the discriminatory conduct alleged is a question of fact which cannot be determined at this stage of the proceedings, which is prior to much discovery needed to resolve this dispute. If the plaintiffs do not demonstrate that the alleged violations were of a continuing nature, this motion can be renewed. *Kohn, supra* at 519 n.8. *See also Egelston, supra* at 755.

### 2. Examinations Subsequent to February 11, 1977

█ Defendants seek summary judgment as to the Title VII claims relating to the examinations given after February 11, 1977, the date the EEOC issued its report with respect to the charges filed against the defendants. The contention is that these tests are not reasonably related to nor within the scope of what might reasonably be expected to grow out of the EEOC charges, and therefore not properly before this court. *See generally Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184 (D.Md.1977). However, as previously stated, this court will consider the recently issued right to sue notices. *See Weise, supra.* These notices, issued on November 9, 1978, were subsequent to all examinations here in question. Therefore, the motion for summary judgment is denied, with leave to renew should the defendants contend that the exams in question were not within the scope of or reasonably related to the recent EEOC investigation.

### H. Individual Defendants; Title VI; Discriminatory Effect

█ There remain several issues upon which the defendants seek summary judgment. First, defendants assert that certain individual defendants did not possess sufficient authority or responsibility to be liable for hiring, promotion or assignment practices. Second, defendants contend that Title VI is inapplicable in that they do not receive federal financial assistance. Finally, New Rochelle seeks judgment with respect to the promotional exam it adminis-

tered on the ground that it did not have a discriminatory effect. Defendants, by affidavit and the complaint, have sufficiently placed in issue (i) the authority and responsibilities of the individual defendants here involved,[26] (ii) whether the defendants receive federal financial assistance and (iii) the discriminatory effect of all the exams, to convince this court that factual issues exist which preclude a determination upon this motion. It is therefore denied.

### IV. State Defendants' Motions to Dismiss and, in the Alternative, for Summary Judgment

The state defendants move to dismiss the Amended Complaint pursuant to Fed.R. Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R. Civ.P. 56(b). Both motions are hereby denied for the following reasons.

### A. The State Defendants are Proper Defendants

█ The state defendants seek dismissal of plaintiffs' claims under Title VII on the ground that none of the state defendants is an "employer" or "agent of an employer" within the meaning of the statute. However, plaintiffs have sufficiently alleged that the state defendants are agents of the municipal defendants; hence, the state defendants are proper defendants to plaintiffs' claim, under Title VII, that they were discriminated against by the municipal defendants' use of employment examinations prepared by the DCS.

To decide this motion the relationship between the DCS and the state defendants must be considered from both a legal and practical point of view. The New York Civil Service Law empowers the defendant municipal civil service commissions to administer independently the provisions of that law. N.Y.Civ.Serv.Law § 17. Furthermore, New York law requires that the hiring of municipal firefighters be conditioned on passing a competitive examination. *See* N.Y.Const., Art. V § 6, and N.Y.

---

**26.** Although the job descriptions and city charter submitted in support of this motion may be relevant evidence, they are not dispositive of the issue involved.

Civ.Serv.Law § 50. To comply with this requirement the municipal defendants requested that the DCS prepare and grade the examinations they used. *See* N.Y.Civ. Serv.Law § 23. The situation is not one in which the DCS controlled the municipal hiring to such an extent that the DCS can itself be considered plaintiffs' "employer." [27] However, the alleged role of the DCS in preparing and processing the examinations could render the DCS and its staff an "agent" of the municipal defendants with regard to those examinations.[28]

Other alleged factors indicating an interrelationship between the municipal defendants and the DCS are that the DCS advised the municipal defendants that the DCS examinations were not discriminatory; that one of the personnel of one of the municipal defendants sat on the Board of the DCS; and that there was an incentive for the municipal defendants to use the DCS examinations since they came free of charge and were not likely to be challenged by the DCS pursuant to § 25 of the Civil Service Law.

It is also significant that cross-claims filed by the municipal defendants against the state defendants assert that the latter are ultimately liable for any monetary damages awarded because of the allegedly discriminatory examinations. If the state defendants are so intimately related as to be liable for the alleged discrimination by the municipal defendants, it would promote the purposes of Title VII to allow direct suit against the state defendants as agents of the municipal defendants. Finally, holding the state defendants to be proper defendants in this action serves the policy of Title VII, providing a broad remedy against discriminatory practices in employment.

In sum, a complex legal and functional interrelationship is alleged to link the DCS and the municipal defendants. The exact content of this interrelationship is, on the present record, unclear. Therefore, dismissal is improper because the court is not convinced that the plaintiffs could "prove no set of facts in support of [their] claim which would entitle [them] to relief" against the state defendants under Title VII. *See Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Similarly, summary judgment is inappropriate until the facts can be fully developed at trial.

27. In arguing that each of the state defendants is an "employer" under Title VII plaintiffs cite *Kirkland v. New York State Department of Correctional Services, et al.,* 374 F.Supp. 1361 (S.D.N.Y.1974), *aff'd in part*, 520 F.2d 420 (2d Cir. 1975), *supplemental order* 11 E.P.D. § 10,-681 (S.D.N.Y.1976); and *Richardson v. Civil Service Commission of the State of New York*, 387 F.Supp. 1267 (S.D.N.Y.1973). In both cases the DCS was a defendant. These cases are inapposite to the case at bar, however, because they involved state rather than municipal employees.

In more relevant Title VII cases, the courts have deemed a defendant an "employer" if he has a sufficient degree of control over plaintiffs' access to the job market, i. e., sufficient control over plaintiffs' employment opportunities. *See Sibley Memorial Hospital v. Wilson*, 160 U.S.App.D.C. 14, 488 F.2d 1338 (1973); *Curran v. Portland Superintending School Committee*, 435 F.Supp. 1063 (D.Me.1977); and *Puntolillo v. New Hampshire Racing Commission*, 375 F.Supp. 1089 (D.N.H.1974). Based on the tests developed in these cases, the DCS does not have sufficient control to be deemed an employer.

In *Sibley, supra,* a male nurse brought suit under Title VII alleging that the defendant hospital discriminated on the basis of sex by refusing to refer male nurses to female patients. While no direct employment relationship existed between plaintiff and the hospital, the hospital's recommendation was in practice necessary to the employment because the hospital "control[led]" the premises upon which those services were to be rendered, including [plaintiff's] access to the patient for purposes of the initiation of such employment." *Id.* 160 U.S. App.D.C. at 18, 488 F.2d at 1342. A similar high degree of control existed in *Puntolillo, supra.* Finally, in *Curran, supra,* the power of the purse was held to be sufficient control. The case at bar is different, however, because the DCS is not alleged to have a degree of control, either by legal or financial power, as extensive as in the three cases cited above.

28. An agent of an employer can be a proper defendant in a Title VII case. *See* 42 U.S.C. § 2000e(b). *See generally Woodward v. Virginia Bd. of Bar Examiners*, 420 F.Supp. 211, 213 n.3 (E.D.Va.1976) (Virginia Board of Bar Examiners found an agent of the State of Virginia for Title VII purposes); *Harbert v. Rapp*, 419 F.Supp. 6 (W.D.Okl.1976); *Schaefer v. Tannian*, 394 F.Supp. 1128 (E.D.Mich.1974).

There are aspects of this case that do not involve the allegedly discriminatory examination, namely, plaintiffs' attack on the additional requirements the municipal defendants have imposed on applicants pursuant to N.Y.Civ.Serv.Law § 50. The DCS is neither the employer nor an agent of the employer with regard to these non-examination requirements. Also, absent the conspiracy allegation herein denied, the state defendants do not have any relation to, or responsibility for, the other alleged discriminatory practices. All claims relating to such practices will be disallowed. Therefore, the only claims properly asserted against the state defendants are those premised upon the DCS examinations.

 As to the claims under 42 U.S.C. § 1981, plaintiffs allege no contract of employment as to which the state defendants are a party or otherwise responsible. Therefore, this cause of action will be dismissed.

In light of the foregoing conclusions, and for reasons similar to those set forth herein with respect to the municipal defendants' motion for summary judgment, this court declines to decide, at this juncture, (i) the adequacy of plaintiffs' claims under the Fourteenth Amendment and Title VI and (ii) the issue with respect to the recoverability of money damages from the state under the non-Title VII claims (*see Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (opinion and concurring opinion of Justice Brennan)).

B. *Plaintiffs Have Complied with the Requirements of 42 U.S.C. § 2000e–5(c)*

 The state defendants also seek dismissal of the Title VII action on the ground that the plaintiffs have not complied with the requirements of 42 U.S.C. § 2000e–5(c). This statute states as follows:

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law . . . .. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

Defendants assert that the plaintiffs failed to file any complaint with the New York State Division of Human Rights (the "Division of Human Rights") or take any other steps to pursue their remedy in that state agency. Plaintiffs contend that the referral to the Division of Human Rights of the charges these plaintiffs filed with the EEOC satisfied the requirements of the statute. For the reasons stated below, the motion of the state defendants is denied.

The Supreme Court, in *Love v. Pullman Co.,* 404 U.S. 522, 525, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1971) set forth the appropriate guidelines to be followed in Title VII actions:

Nothing in the Act suggests that the state proceedings may not be initiated by the EEOC acting on behalf of the complainant rather than by the complainant himself . . . ..

Since the Division of Human Rights was "informed by the EEOC of the plaintiffs' charges, proceedings were commenced in the state agency within the meaning of Section 2000e–5(b)." *Leisner v. New York Telephone Company,* 358 F.Supp. 359, 362 n.1 (S.D.N.Y.1973). The referral by the EEOC in *Leisner* was of the same type here present. The state here concedes that the EEOC did refer to the Division of Human Rights the complaints of the plaintiffs. That reference, which allegedly set forth

the facts on which this action is based, satisfies the statute.

*Reich v. Dow Badische Co.*, 575 F.2d 363 (2d Cir. 1978) does not require a contrary conclusion. The statute there involved was patterned on that of 42 U.S.C. § 2000e–5(c) and contained almost identical provision with respect to filing with the appropriate state authority. Although in *Reich* the court held that the failure to comply with the provision precluded the action, there was no assertion that the state agency had received a written statement of the facts underlying the plaintiffs' charges. In the instant action the Division of Human Rights received such written statements when the EEOC forwarded the charges to it. Such reference is appropriate and sufficient to satisfy the requirements of Section 2000e–5(c). *See Leisner, supra.*

V. *Class Certification*

Plaintiffs have moved this court for class certification pursuant to Rule 23, Fed.R. Civ.P., asserting that they have satisfied the requirements set forth in subdivisions (a) [29] and (b)(1) and (2) [30] of that rule. The class plaintiffs seek to have certified consists of two major categories: (i) all past, present and future black employees of ("promotional level employees"), or applicants for employment with ("entry level applicants"), and (ii) all blacks who could have applied for, or received, employment with the fire departments of the defendant municipalities. For the reasons discussed below, class certification is denied as to the second category; as to the first category, conditional class certification will be allowed. However a subclass will be established as to each municipality.

Although race discrimination suits most appropriately should be decided as a class action (*see Lo Re v. Chase Manhattan Bank Corp.*, 431 F.Supp. 189, 196 (S.D.N.Y.1977); *Hecht v. Cooperative for American Relief Everywhere, Inc.*, 351 F.Supp. 305, 312 (S.D. N.Y.1972)), defendants strongly oppose certification. The main opposition to plaintiffs' motion is premised on the assertions that the plaintiffs' claims are separate, each relating to only one municipality, that the municipalities are unrelated, and that a plaintiff from one municipality has no cause of action against another municipality from whom that plaintiff has suffered no injury. *See generally La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973).

■ This court has already determined that joinder of the four municipalities is here appropriate and that each plaintiff has standing to sue only the municipality from which he has already allegedly been the subject of discriminatory practices and policies. As has been here determined, there is no proper allegation of conspiracy or other joint liability sufficient to confer on a plaintiff from one municipality standing to sue another municipality.

**29.** Rule 23(a) provides: .

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impractical, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**30.** Rule 23(b)(1) and (2) provide:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

A plaintiff may not use the procedural device of a class action to boot strap himself into standing he lacks under the express terms of the substantive law. It must be noted that the question of standing is totally separate and distinct from the question of plaintiff's right to represent a purported class under Rule 23. While standing to sue is an essential prerequisite to maintaining an action, whether in one's own right or as a representative of a class, the issues are not convertible. Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made. *Weiner v. Bank of King of Prussia*, 358 F.Supp. 684, 694 (E.D.Pa.1973). Therefore, in this situation, had there been no plaintiff from each municipality, class certification could not be granted against any such municipality.[31] Moreover, the fact that there is at least one plaintiff with standing to sue each city does not make class certification proper:

> Without standing, one cannot represent a class, but standing to sue does not, of itself, support the right to bring a class action. All of the other prerequisite tests of Rule 23(a) and (b)(1) or (2) or (3) must be met.

*Id.* It is the determination of this court that there is no identity of interests among the plaintiffs from the separate municipalities. Each municipality, a separate legal entity, is individually responsible for any practices or policies of discrimination within its jurisdiction. Therefore, no less than four separate subclasses are appropriate, one for each city. Rule 23(c)(4), Fed.R. Civ.P. *See also Id.; La Mar v. H & B Novelty & Loan Co., supra* at 465; *Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n*, 66 F.R.D. 581, 588 (E.D.Pa. 1975). The presence of the Vulcan Society does not affect the propriety of this determination, since it would be anomalous to confer greater standing on the Vulcan Society than that of its members. Further, the association's right to sue in its own behalf does not here confer upon it representative status. The direct interests of the association for which protection is sought and to which injury is alleged are different and distinct from the interests of the class for which certification is sought. *See generally Harris v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 39 n.10 (N.D.Calif.1977) and discussion in footnote 32 herein.

Whether or not certification is proper as to any or all of these subclasses must be determined in accordance with all the provisions of Rule 23. *See* Rule 23(c)(4)(B), Fed. R.Civ.P. Although the motion is for certification of one class, it will necessarily be treated as one for certification of each subclass.

### 1. *Rule 23(a)(3) and (a)(4)*

"It is questionable whether the Rule 23(a)(3) requirement that plaintiffs' claims be 'typical' of those of the class has any meaning independent of Rule 23(a)(2) (common question) or (a)(4) (adequate representation). *See* Moore's Federal Practice, ¶ 123.06–2." *Lo Re v. Chase Manhattan Corporation, supra,* 431 F.Supp. at 197. Much of the requirements of 23(a)(3) and 23(a)(4) overlap and require joint consideration here.

Plaintiffs propose subclasses comprised of promotional level employees, rejected entry level applicants and individuals discouraged from applying for a job as a firefighter. The propriety of combining these arguably separate groups is outlined below.

There is no plaintiff who alleges that he was discouraged from applying for a job as a firefighter as a result of the policies and practices of the municipalities. Indeed, it would appear difficult for any such plaintiff to have a properly maintaina-

---

**31.** Indeed, there would be no cause of action against that municipality. In such a situation there would be no case in controversy as to such municipality, thereby lacking compliance with Article III of the Constitution. It should be noted that plaintiffs here do not seek certification of a defendant class. *See Marcera v. Chinlund,* 595 F.2d 1231, 1237–1238 (2d Cir. 1979).

ble cause of action; there would exist no case in controversy. Only those who have been rejected from a job have been legally aggrieved with respect to this action. *See Cornelius v. Benevolent Protective Order of Elks*, 382 F.Supp. 1182, 1196 (D.Conn.1974). As to the inclusion in each subclass of those discouraged from applying for a job, the holding of the Honorable Jon O. Newman in *Williams v. Wallace Silversmiths, Inc.*, 75 F.R.D. 633, 636 (D.Conn.1976), *appeal dismissed* 566 F.2d 364 (2d Cir. 1977) is persuasive:

> There appears to be no basis for including in the class the as yet unknown persons who may be employed by the defendant, or denied employment, or deterred from seeking employment in the future. Any declaratory or injunctive relief that may be entered will redound to the benefit of these persons in any event, but certainly no monetary relief can be awarded to them for discrimination not yet inflicted.

Therefore, those allegedly discouraged from applying for a firefighter position will not be included in any subclass.[32]

■ The next question which must be addressed is whether, within each municipality, the rejected entry level applicant(s) named as plaintiff(s) can represent a class of individuals who were allegedly rejected on grounds other than those for which the named plaintiff(s) were rejected. Each proposed subclass is represented by an entry level plaintiff who has failed at least one of the exams here in issue, and thereby been denied employment. One proposed subclass, that relating to Mt. Vernon, has a representative plaintiff who allegedly was denied employment as a result of a policy of not hiring individuals with criminal records. Two of the entry level plaintiffs who took and failed the exam assert they would have been rejected for employment even had they passed.[33]

This issue, although not decided, was addressed by the Second Circuit in *Vulcan Society of N. Y. City Fire Dept., Inc. v. Civil Service Commission*, 490 F.2d 387, 399–400 (2d Cir. 1973). The policy considerations there expressed, including the interest of prompt resolution of the validity of each objectionable selection procedure, mitigate in favor of granting class certification as to the issues here presented.[34] Unlike the situation in *Lo Re v. Chase Manhattan Corp., supra,* 431 F.Supp. at 197–98, the rejected plaintiffs have an identity of inter-

---

**32.** Even if such a claim could be maintained, there is no individual representative of such claims from any of the municipalities. Further, the Vulcan Society would not be an adequate representative. Its own interests which it here seeks to protect are its right of association and to obtain dues from potential members. This interest is substantially different from the interest of one who would like a position as a firefighter and has been discouraged from seeking such. Further, it has not been established that an association can be a representative plaintiff. "Although members of the class may be members of the association or other organization, it is itself not a member of the class and would therefore normally be barred as a class plaintiff unless perhaps its raison d'etre is to represent the class. *See Norwalk Core v. Norwalk Redevelopment Agency*, 395 F.2d 920 (2d Cir. 1968)." *Harris v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 39 n.10 (N.D.Calif. 1977). Here, there are not even any members of the Vulcan Society who are discouraged applicants.

**33.** Moyer due to his inability to swim (New Rochelle) and Paul McQuay by his not having a high school diploma (Yonkers).

**34.** Besides a plaintiff in each city who was rejected for failing the exam, three of the cities have plaintiffs who are or would be affected by certain other of the selection procedures. Smith, Mt. Vernon, was allegedly denied employment based upon his conviction record. Plaintiff Paul McQuay and Moyer, although denied employment for failing the exam, would be affected by the high school diploma and swimming requirements, respectively. "Although the discrimination . . . might not have directly affected the plaintiffs at the time of the suit, they [are] permitted to object to the employer's discriminatory practices in general on the ground that those practices could well affect them in the future." *Vulcan Society of N. Y. City Fire Dept., Inc. v. Civil Service Commission, supra* at 400 n.16. Although the Second Circuit was explaining what had been permitted in other cases, it was giving tacit approval to the practice of allowing a plaintiff to object to a practice that could well affect him in the future.

est with the other rejected applicants. The fact that the exact reasons for rejection may not be identical is insufficient to deny class status. *Id.; See also League of United Latin American Citizens v. City of Santa Ana,* 410 F.Supp. 873, 887–88 (C.D.Calif. 1976); *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (5th Cir. 1970); *Long v. Sapp,* 502 F.2d 34, 40–43 (5th Cir. 1974). These plaintiffs have the necessary nexus with each subclass and its interests and its claims. *Id.* at 42. The allegations herein allege across the board practices within each municipality with a common goal of discrimination, not merely that certain practices have a discriminatory impact. Those who have allegedly suffered as a result of one of these practices, and who could very well suffer from certain of the other practices in the future, can represent the subclass of all those rejected by their respective municipalities.

▮ Having determined that the entry level plaintiffs for each municipality may represent the subclass of all blacks rejected for employment by the respective municipality, the question now is whether it is proper for each municipal subclass to include the promotional level plaintiffs. Since there is a representative promotional level plaintiff for each municipality, there is a representative plaintiff for each proposed member of the subclass. The interests of these named plaintiffs are essentially co-extensive with those of the other class members.[35] (*See generally Leisner v. New York Telephone Company, supra,* 358 F.Supp. at 372) and together their claims range over each city's hiring and promotion practices. *See generally Hecht v. Cooperative For American Relief Everywhere, Inc., supra,* 351 F.Supp. at 313.

It is not necessary that each and every issue be raised by each and every member of the class or class representatives (*see Herrmann v. Atlantic Richfield Co.,* 65 F.R.D. 585, 592 (W.D.Pa.1974)) and a grouping of similar claims has generally been allowed. *See e.g. Id., Kohn v. Royall, Koegel & Wells, supra,* 59 F.R.D. at 524; *Carr v. Conoco Plastics, Inc.,* 423 F.2d 57 (5th Cir.), *cert. denied,* 400 U.S. 951, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970); *Women's Committee for Equal Employment Opportunity v. NBC, Inc.,* 71 F.R.D. 666 (S.D.N.Y.1976); *Hecht v. Cooperative for American Relief Everywhere, Inc., supra,* 351 F.Supp. at 313. The interests of the plaintiffs in each subclass are not antagonistic to the remainder of the subclass. Furthermore, the plaintiffs are represented by competent counsel, well experienced in discrimination actions, who have shown great skill, diligence and dedication in the proceedings thus far. *See generally Kohn, supra* at 521; *Leisner, supra* at 373; *Hecht, supra* at 313. There are no allegations that the litigants are here involved in a collusive action. Rules 23(a)(3) and (a)(4) have been satisfied. *See Eisen v. Carlisle, Jacquelin,* 391 F.2d 555 (2d Cir. 1968).

### 2. Rule 23(a)(2)

▮ As to the class for which certification was sought by the plaintiffs, defendants asserted that there were no questions of law or fact common to the class. However, as to the subclasses here defined, this assertion could not be seriously made. At the very least, there is an overriding common question within each subclass as to whether the municipality has injected into its promotion and hiring process an assumption that blacks are less capable firemen than whites. *See Kohn, supra* at 521. Such has recently been held to satisfy this requirement of Rule 23.

Turning first to the requirement of Rule 23(a)(2), the Court has already noted that the claims of Brady, LoRe, and Shane, along with those of the seven other plaintiffs who seek to join in this action, all present essentially the same issue— whether CMC and its subsidiaries have engaged in a pattern or practice of discrimination against women in the area of

---

**35.** The presence of a representative plaintiff in *Lo Re, supra,* 431 F.Supp. at 197 would have been sufficient to satisfy the Honorable Kevin Duffy's concern that there be an identity of interest.

professional, managerial, and official positions. The fact that plaintiffs' complaint involves "particularized allegations" and that hiring and promotion decisions of the sort here hinge upon a variety of "subjective factors" would be true of any case involving professional level employment; such factors cannot serve to immunize discriminatory practices in professional fields from attack on a class basis. *See Senter v. General Motors*, 532 F.2d 511, 529 (6th Cir. 1976); *Piva v. Xerox Corp.*, 70 F.R.D. 378 at 385–87 (N.D.Cal.1975). The common question here is not "whether one individual is better qualified than another, but whether that individual is considered less qualified, not because of his or her own worth, but because of discrimination forbidden by Title VII." *Kohn v. Royall, Koegel & Wells, supra*, 59 F.R.D. at 521. *Lo Re v. Chase Manhattan Corp., supra*, 431 F.Supp. at 196–97. *See also Leisner, supra*, 358 F.Supp. at 371; *Hecht, supra*, 351 F.Supp. at 312. Rule 23(a)(2) has been satisfied.

### 3. *Rule 23(a)(1)*

■ The papers in support of this motion addressed the numerosity requirement in the context of the class sought to be certified, not the subclasses here defined. However, plaintiffs have sufficiently pleaded numerosity with respect to these subclasses so as to satisfy this court that conditional class certification is proper at this stage of the proceedings. Although the number of promotional level individuals in each city is relatively small,[36] the number of rejected applicants for each city may, after discovery, prove to be sufficiently numerous to make joinder impracticable. *See e.g. Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972) (70 would suffice). Therefore, pending full discovery from each city and the state as to the number of blacks who failed each exam, the number of black applicants rejected for other reasons, the number of promotional level blacks and other statistics related to the determination here relevant, conditional class certification will be granted.

### 4. *Rule 23(b)(2)*

In addition to satisfying all the elements of Rule 23(a), each of the subclasses must satisfy one of the categories set forth in Rule 23(b). Plaintiffs assert that Rule 23(b)(2) is satisfied.

■ Although individual damages are here claimed, the predominant remedy sought is in the form of injunctive and declaratory relief. Therefore, the use of Rule 23(b)(2) is appropriate. *See Leisner, supra*, 358 F.Supp. at 373; *Women's Committee for Equal Employment Opportunity v. National Broadcasting Co., Inc., supra*, 71 F.R.D. at 671; *Lo Re v. Chase Manhattan Bank Corp., supra*, 431 F.Supp. at 198. Plaintiffs have alleged a pattern and practice of discrimination by each of the defendant municipalities and the state aimed at each of the subclasses here defined. If true, the equitable relief sought would be appropriate. *See id.; Hecht, supra*, 351 F.Supp. at 313. The requirements of Rule 23(b)(2) have been satisfied.

### *Notice*

■ Defendants have requested that this court direct that plaintiffs give notice to the class certified. Such notification is required by Rule 23(c)(2) only when the action is certified pursuant to subdivision 23(b)(3). Although Rule 23(d)(2) provides that this court may, in its discretion, direct that notice to the class be given, such would be inappropriate at this stage of the proceedings. The request for notification to the subclasses may be renewed by the defendants when a final determination as to certification is sought, or at some other appropriate time.

The aforementioned requirements of Rule 23 having been preliminarily satisfied as to the subclasses here delineated, conditional

---

**36.** Seven in New Rochelle; three in Mount Vernon; and on information and belief, one in Yonkers and two in White Plains.

class certification is hereby granted. Each subclass is to consist of promotional level and entry level plaintiffs within each municipality. The pleadings shall be amended in the pre-trial order submitted to this court to exclude, *inter alia*, any allegations with respect to the proposed class allegedly discouraged from applying for a position as a firefighter. Rules 23(d)(4) and (16), Fed.R. Civ.P. This action shall proceed in accordance with the determinations here made.

## VI. *Discovery*

Plaintiffs have moved to compel answers to certain interrogatories; defendants have set forth several objections. Much of the dispute between the parties has been clarified by this opinion. Therefore, in light of this court's holding herein, plaintiffs are directed to review their questions and advise defendants of those which they now feel need be answered. Defendants are directed to submit their answers and/or objections to such interrogatories on or before 30 days after resubmission. Leave is hereby granted to renew this motion should the parties be unable to resolve any disputes that may arise.

IT IS SO ORDERED.